**GULF, C. & S. F. R. CO. v. PRATT.**

No. 12549.

Court of Civil Appeals of Texas.

San Antonio.

Nov. 12, 1953.

Rehearing Denied Dec. 9, 1953.

Wigley, McLeod, Mills & Shirley, Galveston, Woodruff & Holloway, Brownwood, for appellant.

O'Dowd & O'Dowd, Waco, for appellee.

NORVELL, Justice.

This is a railroad crossing collision case. Appellant, Gulf, Colorado and Santa Fe Railway Company, brought suit against Charles Delbert Pratt for damages to its train, equipment and tracks, occasioned by the collision. Pratt filed a cross-action for personal injuries and damages to his truck, and, after a jury trial, was awarded a judgment of $8,500, despite jury findings that he was guilty of negligence in numerous particulars. The theory of recovery was the doctrine of discovered peril. The applicability of such doctrine under the facts of this case, and the sufficiency of the evidence to support the jury's answers to the questions relating thereto, present the controlling issues upon this appeal.

The collision took place on March 6, 1952, between seven and eight o'clock in the morning, in clear daylight. The crossing involved is about four miles from the town of Menard where the highway (running east and west) connecting Menard and Brady intersects the railroad track at an approximate right angle. The evidence indicates that the highway right-of-way at this point is approximately 100 feet in width and the central portion thereof is occupied by an asphalt hard surface approximately 20 feet in width. The highway was fenced and cattle guards were constructed at the points where the railroad intersected the fence, each cattle guard being approximately 50 feet from the center line of the highway.

Appellant's train was traveling in a southerly direction, while appellee in his truck was going west toward Menard. While the jury found that the crossing was extrahazardous and dangerous, this finding is without support in the evidence. The evidence indicates, and photographs introduced in evidence demonstrate, that the crossing is open and the view thereof from the highway is unobstructed; that the railbed is not more than three and a half feet below the general level of the ground at any point within several hundred feet on either side of the crossing, and that such crossing could have been seen by one driving along the highway in a westerly direction for a distance of 300 to 350 yards. Under the facts of this case liability can not be predicated upon the failure to have a flagman or electrical warning device at the crossing. Missouri, K. & T. R. Co. of Tex. v. Long, Tex.Com.App., 299 S.W. 854; Texas & N. O. R. Co. v. Stratton, Tex.Civ. App., 74 S.W.2d 741, writ refused.

We further regard the findings that the train was being operated at a fast, careless and reckless rate of speed, and that a failure to ring the engine bell was a proximate cause of the collision, as being without support in the evidence. The only evidence indicating that the train was traveling in excess of 20 or 25 miles an hour was Pratt's testimony that the train "was coming about as fast as he was." He had estimated that he was traveling about 45 miles

an hour. In this Court, as a necessary element of his discovered peril theory, appellee took the position that the speed of the train was not in excess of 25 miles per hour. However this might be, the evidence is that the crossing was four miles from town, and there is no reasonable basis for saying that either 25 or 45 miles per hour is a dangerous speed for the open country. Absent other considerations, the engineer is not required to slacken the speed of his train below 45 miles per hour (the maximum estimate stated) whenever he sees a motor vehicle approaching a crossing. The evidence demonstrates rather conclusively, and the jury found, that the whistle or horn on the train was blown. This produced a warning sound much louder than the bell, and this fact, together with others hereinafter mentioned, demonstrates that the failure to ring the bell could not have been the proximate cause of the collision.

It is conceded that the sole basis of appellee's recovery rests upon the issues submitting the "discovered peril doctrine." The jury found that appellee, Pratt, was guilty of the following negligent acts or omissions proximately causing the collision, viz.: (a) In failing to keep a proper lookout (generally, and also to ascertain whether there was a train upon the crossing in question); (b) in failing to stop and continuing to drive his truck forward on the highway after the Motor Car Engine of the Railway Company, in approaching within 1500 feet of the highway crossing, had emitted a signal audible for such distance, and after such Motor Car Engine, by reason of its speed and nearness, was an immediate hazard; (c) in failing to stop his truck after the train became plainly visible and in hazardous proximity to the crossing; (d) in failing to apply the brakes on the truck after the train became visible to him; (e) in failing to reduce the speed of his truck after the train became visible to him; (f) in failing to apply his brakes after the train was upon the intersection; (g) in failing to reduce the speed of the truck after the train was upon the intersection (the jury found that the train was upon the intersection before Pratt's truck reached the same); (h)

in wholly failing to heed the warning sounds emitted by the train as it approached the crossing; (i) in the "manner in which he operated his truck at the time of and immediately prior to the collision in question."

■ Under the above findings, it is abundantly clear that Pratt violated the following provisions of Article 6701d, § 86, Vernon's Tex.Civ.Stats., viz.:

"Whenever any person driving a vehicle approaches a railroad grade crossing, the driver of such vehicle shall stop within fifty (50) feet but not less than fifteen (15) feet from the nearest rail of such railroad and shall not proceed until he can do so safely when: * * * (c) A railroad engine approaching within approximately fifteen hundred (1500) feet of the highway crossing emits a signal audible from such distance and such engine by reason of its speed or nearness to such crossing is an immediate hazard; (d) An approaching train is plainly visible and is in hazardous proximity to such crossing."

However, in Ford v. Panhandle & Santa Fe Ry. Co., Tex., 252 S.W.2d 561, the Supreme Court held that the fact that a person had been guilty of disobeying the injunctions of Article 6701d, § 86, did not preclude him from recovering under the doctrine of discovered peril.

In the present case, the jury found that: (a) Pratt, prior to the collision, was in a perilous situation; (b) the engineer of the train actually discovered Pratt's peril within such time and distance as that, by the means at hand, consistent with the safety of himself, his train, and the occupants of his train, he could have avoided the collision; (c) the engineer realized that Pratt would probably not extricate himself; (d) the engineer failed to exercise ordinary care in the use of the means at hand consistent with safety to avoid the collision; (e) such failure was a proximate cause of the collision.

Appellant attacks the sufficiency of the evidence to support the discovered peril finding, as a matter of law and as a matter of fact. Pratt testified that the right-hand front portion of the truck struck the train at the coupling between the motor engine and the coach, the two units composing the train, and that the rear end of the truck swerved around and hit the coach. He placed the truck at the point of impact upon the left-hand or south portion of the road, with its left wheels about two feet off the pavement on the left-hand side of the highway. Pratt further testified that when he saw the motor engine come through the right-hand or north cattle guard, he swerved to the left, without putting on his brakes. This accounts for the truck's position on the left-hand or south portion of the highway right-of-way.

The engineer testified that as he approached the crossing, with the whistle blowing and the bell ringing, he slowed down to about 20 miles per hour; that when he was about two to three hundred feet away he saw the truck approaching the crossing, some five or six hundred feet distant therefrom, and believed the truck would slow down and let him by; that upon reaching the crossing, he released the air from the air brakes, and about then the truck plowed into the rear end of the train. On cross-examination the engineer testified that he did not observe that the truck driver slakened speed in approaching the crossing; that he could have stopped the train within 100 feet had the truck driver given him warning that he wasn't going to stop, but that, "I didn't know he wasn't going to stop. I didn't know we had a wild driver like that down in the country."

The conductor of the train testified that he was sitting in the front end of the coach on the left-hand (south) side looking for deer and observed Pratt's truck approaching at what he considered a dangerous rate of speed. According to this witness, the place of impact was close to where he was sitting. He was some 80 to 90 feet back of the engineer, and his testimony, as well as that of other witnesses, throws little, if any, light upon the issue of the "discovery of peril" on the part of the engineer, the person charged with negligence.

Pratt testified that he saw a railroad sign about 350 feet from the crossing; that he looked to the right and then to the left and didn't see "any train of any kind or any description"; that he first saw the train when it came through the right-hand (north) cattle guard, whereupon he swerved his truck to the left without putting on his brakes. He didn't hear a whistle or a bell, nor see anything prior to the time he saw the motor engine at the cattle guard. He estimated that he was traveling about 45 miles an hour. Although Pratt's only opportunity to estimate the speed of the train was when he observed the motor engine emerging from the cattle guard, he at one point in his testimony estimated the speed of the train to be the same as his. However, in the brief and upon oral argument, appellee generally accepts as correct the 25 mile an hour estimate. It appears that the train traveled a total distance of about 140 feet from the time Pratt observed the motor engine emerging from the cattle guard until his truck collided with the train at the coupling of the motor engine and the coach.

 While the jury was not required to believe the testimony of the engineer and it has been held that actual discovery of peril may be proved by circumstantial evidence, San Antonio & A. P. R. Co. v. Jaramilla, Tex.Civ.App., 180 S.W. 1126, something more than mere surmise and conjecture is required. Neither the engineer's nor Pratt's testimony, taken in the light of the undisputed facts in this case, will support the theory of "discovered peril." And this is true, regardless of the various possible combinations of time, distance and speed that might be employed. The train was first upon the crossing, as found by the jury, and undoubtedly was much closer to the crossing than the truck at the time it was observed by the engineer. A case involving somewhat similar facts was before the Supreme Court in Panhandle & S. F. R. Co. v. Napier, 135 Tex. 314, 143 S.W.2d 754, 756, in which the Court said:

"It has often been held that discovery of a car approaching a railroad crossing at a time when its occupant is not in danger, is within itself not sufficient to raise the issue. It is further held that the person causing the injury is not bound to anticipate negligent conduct on the part of the injured person, but has a right to rely upon the assumption that the driver of the car is in possession of his faculties and will be able to control his vehicle so as not to come into a position of peril. Fort Worth & D. C. R. Co. v. Shetter, 94 Tex. 196, 59 S.W. 533; Galveston, H. & S. A. R. Co. v. Price, Tex.Com.App., 240 S.W. 524; Texas & P. R. Co. v. Breadow, 90 Tex. 26, 27, 36 S.W. 410; Texas & N. O. R. Co. v. Adams, Tex. Civ.App., 27 S.W.2d 331; Young v. Dallas Ry. & Terminal Co., Tex.Civ. App., 136 S.W.2d 915; Texas & P. R. Co. v. Foster, Tex.Civ.App., 58 S.W.2d 557."

In the later case of Ford v. Panhandle & Santa Fe R. Co., Tex., 252 S.W.2d 561, the Supreme Court recognized that the Napier case was correctly decided, but disapproved of some of the language used therein, as well as in other earlier decisions. The criticized language related to a definition of the zone of imminent danger or peril. 65 C.J.S., Negligence, § 137, page 767. The statements in the Napier case, that so long as a vehicle approaching a crossing could stop short of the railroad tracks it was not within the zone of peril, was overruled, and the holding of International & G. N. R. Co. v. Munn, 46 Tex.Civ.App. 276, 102 S.W. 442, 445, upon this point, was approved, i. e., that "it is not requisite that the engineer must know that disaster is inevitable unless he himself can avert it. It is enough if he knows that the person injured was in a place of danger from which he probably could not or would not extricate himself in time." In other words, the "certain injury" philosophy of discovered peril is rejected and the doctrine held applicable whenever the person approaching the crossing on the highway is so near the ultimate point of collision and under such circum-

stances that it is reasonably apparent to the engineer that such approaching person will not stop or change his course before coming into the path of danger. 65 C.J.S., Negligence, § 137, page 767. It is also stated in Corpus Juris Secundum, upon authority of Lotta v. Kansas City Public Service Co., 342 Mo. 743, 117 S.W.2d 296, that "in the absence of obliviousness on the part of the person approaching; the zone of imminent peril reaches no farther beyond the direct path of the vehicle than the distance within which such person is unable by his own efforts to stop short of it." 65 C.J.S., Negligence, § 137, page 767. In the Missouri case [342 Mo. 743, 117 S.W.2d 300] it was said that the zone of peril "is always narrower than the danger zone of an oblivious person approaching at the same speed, at least except where inability to control exists and would become apparent at the same distance at which obliviousness might be observed."

Pratt, according to his testimony, was wholly oblivious to the train, despite the crossing sign (which he saw) and the whistling of the train, until the motor engine entered the cattle guard. The only circumstance from the standpoint of the engineer indicating that he was oblivious to the approach of the train was his failure to slow down while the engineer observed him. But, as heretofore pointed out, the train was undoubtedly much closer to the crossing than was the truck, and the jury in effect so found. It had traveled some 140 feet from the right-hand cattle guard to the point where it was struck by the truck. Under the evidence of this case and in view of these physical circumstances, the engineer can not be charged with knowledge of Pratt's stated obliviousness to the approach of the train. This may be seen by comparing the facts of this case with those disclosed by the report of Ford v. Panhandle & Santa Fe R. Co., Tex., 252 S.W.2d 561, 564, wherein it appeared, according to Ford's testimony that the front wheels of his vehicle had crossed the first rail of the crossing when he became aware of the train. He then attempted to avoid the impending collision by "beating" the train

across the intersection. The automobile was upon the crossing ahead or at the same time as the train, and the Supreme Court said, "Since the automobile was hit on the rear fender and lacked only 3 or 4 feet of crossing the track in safety, the jury could reasonably have concluded that an application of the emergency brakes at any time before the train reached the crossing would have afforded the necessary time for the automobile to pass over the track unharmed."

A different factual situation is presented by the record now before us and we hold, as a matter of law, that there is "no evidence" supporting appellee's "discovered peril" issues. As there is likewise "no evidence" supporting the other charges of negligence on the part of appellant's agents and servants (as heretofore pointed out), it follows that the jury's answers to such issues, as well as the discovered peril issues, should have been disregarded and appellant's motion for judgment sustained. It becomes our duty to render such judgment as should have been rendered by the trial court. Rule 434, Texas Rules of Civil Procedure, this is, judgment for appellant upon the jury's findings that appellee was guilty of negligence in violating the provisions of Article 6701d, § 86, and that such negligent acts and omissions were the proximate cause of the damages sustained to appellant's railway coach and track in the monetary sums found by the jury.

■ It should perhaps also be stated that even if we be mistaken in our holding that there is "no evidence" supporting the discovered peril theory, the appellee is precluded, by the jury's findings, from recovering a judgment for damages against appellant. As heretofore indicated, the jury found that the train became visible to Pratt as he approached the crossing, and that Pratt thereafter failed to apply his brakes; that this was negligence and a proximate cause of the collision in question. The jury further found that Pratt failed to reduce the speed of his truck after the train became visible to him; that this failure was

likewise negligence and a proximate cause of the collision. Pratt testified that he first saw the motor engine when it came from the north and entered upon the cattle guard to his right. He said that he did not apply his brakes but sought to avoid the collision by turning or veering to the left. Pratt also stated that the train traveled the distance of about 140 feet from the point where he first saw it to where the collision took place. This distance is arrived at by taking the distance of the cattle guard from the point of impact (to the left or west of the hard surface of the highway) and adding thereto the length of the motor car which was 75 feet. The indications are that he was traveling at a much faster rate of speed than was the train, and the jury could have concluded that he was much farther distant than 140 feet from the crossing when he first observed the train at the cattle guard. Pratt testified that he could not have avoided the collision by attempting to stop his truck or by reducing his speed. He stated that had he put on the brakes he would have stopped the truck squarely across the railroad tracks. The jury, however, did not accept this conclusion, but, on the contrary, found that Pratt could have stopped his truck after he discovered the train at the crossing.

It therefore appears that even though effect be given to the findings that the engineer failed to use the means at his disposal to avoid the collision, Pratt likewise was guily of contemporaneous negligence of a like degree.

Texas does not follow the doctrine of "continuing contributory negligence," which is discussed in Section 2814 of Blashfield's Cyclopedia of Automobile Law and Practice. In the rationale of the Texas doctrine the failure to use due care after discovery of peril is likened to a wilful act. Wilson v. Southern Traction Co., 111 Tex. 361, 234 S.W. 663. However, in submitting the theory to the jury, the standard of the ordinary prudent man is used and it may safely be said that, in the overwhelming majority of the cases in which the doctrine is invoked, there is no intimation of wilful-

ness as distinguished from carelessness or negligence.

The picture of the deaf or drunken man standing upon a trestle in plain view of the operator of an on-coming locomotive, whose destructive tendencies must be restrained by force of law, while presenting a proper case for the application of the doctrine, is largely fictional and far from typical. Discussions of the doctrine have occasioned rhetorical expressions against wrongdoing of a kind and quality that seldom has a factual basis in the numerous cases in which the accepted special issues embodying the doctrine are submitted. The bases of the rule thus stated in the abstract seldom coincide with the doctrine transformed into law in action as administered by the trial courts and the juries therein impaneled. The standard of the reasonably prudent man, as a logical proposition, would seemingly relate to one quality of conduct having application to negligence law rather than the law of wilful torts. However that might be, and regardless of whether one thinks the doctrine should properly be regarded as one of proximate cause or as one involving different moral qualities or grades of human conduct, it appears in this case that under the jury's findings the parties are upon a parity insofar as both time of dereliction and quality of conduct are concerned.

Under the jury's findings, the appellee discovered the presence of the train in time to have prevented a collision by reducing his speed and applying his brakes. Consequently, he cannot recover of appellant even though its engineer may also have been in a position to avoid the collision.

In accordance with our conclusion first stated, that appellant's motion for judgment should have been granted, the judgment appealed from is reversed and judgment here rendered that appellant have and recover of and from appellee the sum of $3,340.19, together with interest thereon at the rate of six per cent per annum from the 9th day of October, 1952, until paid.

Reversed and rendered.