**MISSOURI–KANSAS–TEXAS RAILROAD COMPANY OF TEXAS, Appellant,**

v.

**Ruth Adele McFERRIN et al., Appellees.**

No. 10284.

Court of Civil Appeals of Texas.

Austin.

April 27, 1955.

Rehearing Denied May 25, 1955.

412

Naman, Howell & Boswell, G. H. Penland, Hilton E. Howell, Waco, for appellant.

Saulsbury, Skelton, Everton, Bowmer & Courtney, Temple, for appellees.

HUGHES, Justice.

This suit results from a collision between a passenger train operated by appellant, Missouri-Kansas-Texas Railroad Company of Texas and a 1941 Pontiac Club Coupe automobile operated by R. T. McFerrin, deceased, which collision occurred about 2 P.M., January 31, 1953, at what is called Center Oak Crossing located about two miles north of Holland in Bell County, Texas.

The suit was brought by the widow of R. T. McFerrin, Ruth Adele McFerrin, for herself and as next friend for the eight minor children of herself and her deceased husband.

Trial was to a jury which returned a verdict in every way favorable to appellees. The jury found:

(1) The train was being operated at an excessive rate of speed, (2) the engineer failed to keep a proper lookout, (3) the train bell was not rung nor its whistle blown, (4) the railroad crossing was extra hazardous and no automatic warning signal was maintained, (5) the essentials of the doctrine of discovered peril, (6) the collision was not the result of an unavoidable accident.

■ The jury exonerated deceased of having been contributorily negligent including the finding that he did not fail to stop his car within 50 feet and not less than 15 feet of the nearest rail.

Damages totaling $58,750 were apportioned among appellees.

Appellant's first point is that deceased was guilty of contributory negligence proximately causing the collision, as a matter of law, under Section 86, paragraph (d), Art. 6701d, V.A.C.S., which we quote:

"Whenever any person driving a vehicle approaches a railroad grade crossing, the driver of such vehicle shall stop within fifty (50) feet, but not less than fifteen (15) feet from the nearest rail of such railroad and shall not proceed until he can do so safely when: * * *

"(d) An approaching train is plainly visible and is in hazardous proximity to such crossing."

This point is overruled. Explanation of this ruling requires a recitation of the more important evidence in a manner most favorable to appellees.

Deceased was thirty-seven years old at the time of his death and was in good health. He was a fireman for the G. C. & S. F. Ry. Company but had been recently promoted to engineer. The McFerrins had lived within two miles of the Center Oak Crossing for about five years prior to Mr. McFerrin's death and he was familiar with the crossing using it at least four or five times weekly.

The day of the accident was cloudy and misty. The time was about 2 P.M., January 31, 1953.

The scene of the accident is shown by the picture inserted on the following page:

This picture was made in March, 1953, and introduced in evidence by appellant. It shows the track to the south from which direction the train came to strike the Mc-Ferrin car and a car approximately 50 feet west of the west track on the gravel road traveled by the McFerrin car.

We also insert a picture introduced by appellant taken from the gravel road, shown in the preceding picture, 35 feet west of the west rail and showing a train stopped 900 feet to the south.[1]

The gravel road crosses the track at right angles and proceeding west it begins to turn at 60 feet and turns south at about 100 feet from the crossing and parallels the track for about 600 feet upgrade (gaining about 9.5 feet elevation in 600 feet) when it turns west and away from the tracks.

At about 25–50 feet south of the crossing and between the tracks and the gravel road there begins an embankment which runs south and parallel to the tracks. This embankment at 100 feet south of the crossing is 4 feet higher that the rails, 5 feet higher at 200 feet, 9 feet higher at 250 feet, 11 feet higher at 275 feet, 15 feet higher at 500 feet and about 19 feet higher at 800 feet.

These figures are profile figures and do not take into account weeds, trees and shrubs growing on the embankment to a height, in some places, of four or five feet.

Some 1100 feet south of the crossing the tracks enter a long curve to the west which curve is in a deep cut for more than half a mile.

The railroad right of way is 100 feet wide, the tracks being in the center.

A locomotive is about 14 feet 6 inches high.

The eye level of a person seated in a passenger automobile is about 4 feet from the ground.

Based on these physical facts Mr. Fred Williamson, County Surveyor of Bell Coun-ty, a witness employed by and vouched for by all parties, testified that at a height of 4 feet above the gravel road 50 feet west of the crossing looking in the direction from which the train approached on the occasion in question, the line of sight would be completely unobstructed for 350 feet, and as far back as 700 feet south of the crossing the line of sight would include more than half of an object 14 feet high. At the same 50 feet on the road the line of sight would continue to include some portion of a 14 foot object on the track as far south as 1,000 feet. At 45 feet west of the crossing on the road the line of sight on the track to the south at 700 feet would include the upper 10 feet of a 14 foot object, and at approximately 1,000 to 1,100 feet the line of sight would still include some portion of the object. At 40 feet the line of sight would include the upper 10 feet of a 14 foot object as far south as 700 feet and the upper half of such object at 1000 feet and going further south would include some portion of it. From thirty feet west of the crossing to the crossing "there is no physical object other than the curve of the track or the slight rise of the ground to obstruct the line of sight from that point on." The embankment "is no longer in the line of vision" and is not a factor to be considered. From 30 feet the only obstruction would be the curvature of the track so that at 1,400 feet the top of an object 6 feet high would be in the line of vision.

There was no automatic signal at the crossing, no flagman and no warning device except the standard cross-arm sign.

The evidence shows that this crossing was on the main road from the Center Oak community to State Highway 95 on the east side of the tracks and that it was a busy crossing being much used by the public and by the railroad, at least eight fast trains passing over it every twenty four hours.

Many witnesses testified to the dangerous character of the crossing and the difficulty

1. The train, as shown, would reach the crossing, if traveling at 88 feet per second, in about 10.2 seconds.

in seeing trains approaching from the south when crossing the tracks from west to east.

The evidence also showed that there had been ten near accidents and three separate accidents at the crossing prior to the one in suit.

Mr. Jap Stafford who had known the crossing all his life (65 years) and who had "had dangerous calls there two or three times" testified that a year or so before Mr. McFerrin was killed he discussed the dangerous character of the crossing with appellant's Division Engineer and Division Superintendent in an unsuccessful effort to have the company build an overpass.

Mr. McFerrin approached the tracks from the fireman's side of the locomotive. The fireman testified that he had seen the McFerrin car coming from the west before the road turned left to parallel the tracks at a speed of about 18 miles per hour and that the car slowed perceptibly when it made the right angle turn on the wet, slick ground just before reaching the crossing.

The train at the moment of the collision was traveling 60 miles per hour or 88 feet per second.

The McFerrin car almost cleared the crossing. It was struck about 2 feet from the back end. After the collision it was noted that the right car window was open and the car was in second gear. This latter fact together with testimony that it was the habit of Mr. McFerrin to stop before crossing the tracks is the principal evidence upon which the jury based its finding that deceased did not fail to stop as required by the above statute.

Appellant has cited several cases including our Lackey v. Gulf C. & S. F. Ry. Co., Tex.Civ.App., 225 S.W.2d 630, under this point. The factual differences in such cases are so marked that comparison is almost futile. In Lackey, for instance, plaintiff pulled around a street corner and without stopping drove onto the tracks and he was unable to explain why he failed to see the engine which struck him, it appearing that the only obstruction to his view was

a box car or two some 300 feet away. Also it did not there appear that the engine was bearing down on plaintiff at the rate of 88 feet per second on a murky day nor was the crossing shown to be extra hazardous.

Texas & N. O. R. Co. v. Stewart, Tex. Civ.App., 248 S.W.2d 177, Waco, writ ref. N.R.E., is of no help because there plaintiff's truck traveling at an unlawful rate of speed ran broadside into a train already occupying the crossing and moving at a rate of speed of 10 to 15 miles per hour.

Zamora v. Thompson, Tex.Civ.App., 250 S.W.2d 626, San Antonio, writ refused, was another case in which plaintiff drove into the side of a train already occupying the crossing when it came within the range of his vision.

Gulf C. & S. F. Ry. Co. v. Pratt, Tex.Civ. App., 262 S.W.2d 775, San Antonio, writ ref., N.R.E., was a "discovered peril" case there being no contention that jury findings convicting Pratt of violating the statute involved here were without evidentiary support.

Ford v. Panhandle & Santa Fe Ry. Co., 151 Tex. 538, 252 S.W.2d 561, is also solely a "discovered peril" case.

In Peters v. Chicago, R. I. & P. R. Co., Tex.Civ.App., 257 S.W.2d 860, Amarillo, writ ref., N.R.E., the jury found that plaintiff violated this statute in failing to stop and that this was a proximate cause of the collision. The evidence being sufficient to support these findings and the statute being held constitutional judgment for the railroad was affirmed.

Fort Worth and Denver R. Co. v. Barlow, Tex.Civ.App., 263 S.W.2d 278, Fort Worth, writ ref., N.R.E., involved a nighttime collision between a train and car, the jury finding, as here, that the car driver did not fail to stop as required by the statute and that while he failed to see the approaching train this was not negligence. Judgment for plaintiff was reversed and remanded because of error in the charge. This case is, in our opinion, strong authority for denying that this statute lays down an inex-

orable rule applicable in all crossing collisions and regardless of all attendant circumstances. This conclusion is confirmed by the opinion in Texas Mexican R. Co. v. Bunn, Tex.Civ.App., 264 S.W.2d 518, San Antonio, writ ref., N.R.E., cited by appellant and also a nighttime crossing collision case. The Court there held the statute inapplicable even though the motorist did not stop, the Court refusing to hold, as a matter of law, that the train was "plainly visible" within the meaning of the statute.

A case reported since the briefs in this case were filed is Texas and P. Ry. Co. v. Midkiff, Tex.Civ.App., 275 S.W.2d 841, 843, Eastland (Application for Writ of Error pending), which was a daytime crossing collision case in which it was held that this statute did not apply as a matter of law. Judgment for the motorist was affirmed. The train there, as here, was running 60 miles per hour. The highway there, as here, paralleled the railroad for some distance before making a short right hand turn, 45 degree turn here, and pulling up over the railway dump and over the tracks. A witness in that case testified:

" 'A. You turn and drive alongside of the railroad until you pull right up on it nearly. It makes it hard to see back here if a train was coming, and there was a lot of tall grass back over in here. I don't know whether this shows it very plain or not, and some trees and several mounds of dirt right over here that made it hard to see. You also, if you were looking for a train, you would have to turn all the way around and look behind you, and it's an awful bad crossing.' "

The situation here is most similar. The dirt road followed the track for 600 feet before reaching the crossing. As Mr. McFerrin drove along this road his back was to the approaching train. The embankment and such vegetation as grew on it was between the road and the tracks. The weather was cloudy and misty.

The crossing was very dangerous, the scene of three prior accidents and many near accidents. Mr. McFerrin was driving slowly and cautiously and obeying the law. The train was traveling 88 feet per second and its operatives failed to sound the horn or whistle and failed to ring the bell.

Under all the facts it is our opinion that Mr. McFerrin's failure to avoid the collision is explainable upon some reasonable hypothesis other than that of his own negligence.

Appellant's Point Two is that Mr. McFerrin, independently of the statute considered under Point One, was contributorily negligent as a matter of law.

Considering the evidence alluded to under the preceding point we reach the same conclusion here as we did there. The point is overruled.

Points Three and Four are that there is no evidence or insufficient evidence to support the jury findings of discovered peril.

The jury having found Mr. McFerrin not to have been guilty of any negligent act and we having concluded that he was not negligent as a matter of law it is unnecessary that we determine these points relating to discovered peril findings as liability of appellant is properly predicated upon its own primary negligence as found by the jury.

Point Five need not be considered as it is premised upon our holding that Mr. McFerrin was contributorily negligent as a matter of law.

Points Six and Seven are that the jury findings that the Oak Center crossing was extra hazardous were without any supporting evidence and were against the overwhelming preponderance of the evidence are overruled. We have set out enough of the evidence to establish, in our opinion, that the findings of the jury were well supported. See Galveston H. & S. A. Ry. Co. v. Wells, 121 Tex. 310, 50 S.W.2d 247; Missouri, K. & T. Ry. Co. of Texas v. Long, Tex.Civ.App., 23 S.W.2d 401, Austin, writ refused; Panhandle & Santa Fe Ry. Co. v. Ray, Tex.Civ.App., 221 S.W.2d 936,

Austin, writ ref., N.R.E.; *Southwest Stone Co. v. Symons*, Tex.Civ.App., 237 S.W.2d 380, Fort Worth, writ ref., N.R.E.

Points Eight and Nine are that the court erred in admitting in evidence, over objections, testimony of witnesses as to prior accidents and near accidents at the Oak Center crossing and as to the dangerous character of such crossing and of the difficulty in seeing approaching trains.

 Testimony as to accidents, near accidents, and of difficulty in seeing approaching trains is admissible in crossing collision cases when the issue that the crossing is extra hazardous or unusually dangerous is properly raised by the pleadings and evidence. *Missouri, K. & T. R. Co. v. Long, Texas-Mexican Ry. Co. v. Bunn, supra, Karr v. Panhandle & Santa Fe Ry. Co.*, Tex.Sup., 262 S.W.2d 925.

The conditions existing at the time of such incidents and at the time of encountering such difficulties should, of course, be reasonably similar [2] to those existing at the time of the incident in suit. Exact identity is not required although this seems to have been the basis of appellant's objection, the pertinent part of which we quote:

> "We object to that as being immaterial to any issue in this case. Nothing would be material except what happened on this particular day and at this particular time. Any evidence of any near accident at some other time, and under some other conditions, which necessarily would exist at some other time, would be entirely immaterial and irrelevant and highly prejudicial and inflammatory."

This objection, if sustained, would have excluded all of the evidence being considered because it is predicated upon the impossibility of conditions being identical at different times. This objection, in our opinion, was based upon an improper standard and was not sufficient to constitute an objection that the conditions at the crossing were not similar at the various times mentioned by the witnesses.

 Even if appellant's objection had been sufficient we believe that it was properly overruled. Each witness testifying to an accident or near accident was questioned as to similarity of conditions at the crossing and as to his approach being the same as that made by Mr. McFerrin and each answered there was similarity and the same approach. Of course all of such incidents did not occur on the same day of the same month of the year i. e. on a January thirty first, and, no doubt, the condition of the foliage on trees and shrubs varied according to the season of the year when the incident occurred. We believe that the jury was fully capable of evaluating these minor variations in conditions and that their existence was not of sufficient substance to require exclusion of this testimony.

 Point Ten is that the court erred in refusing to instruct the jury, as requested, that any recovery awarded appellees would not be subject to the payment of an income tax to the United States Government. The case of *Texas & N. O. R. Co. v. Pool*, Tex. Civ.App., 263 S.W.2d 582, Waco, is cited which, by way of dictum, gives approval to the holding in *Dempsey v. Thompson*, 363 Mo. 339, 251 S.W.2d 42, 45, by the Supreme Court of Missouri, that while such a "cautionary" instruction should be given the giving or refusal of it would be within the discretion of the trial court. In so holding and in overruling its former opinion on this point the Court said:

> "Can there be any sound reason for not so instructing the jury? We can think of none. Surely, the plaintiff has no right to receive an enhanced award due to a possible, and, we think, probable misconception on the part of a jury that the amount allowed by it will be reduced by income taxes. Such an instruction would at once and for all

---

2. "Similar" means resembling or having a general likeness.

purposes take the subject of income taxes out of the case." [3]

The Missouri practice in instructing juries seems to us to be quite different from our own. However this may be we are not in accord with its reasoning as expressed in the foregoing quotation. It assumes that the jury will not confine itself to the evidence nor the court's charge but will consider and take into account matters not mentioned therein. This is to assume that there will be misconduct on the part of the jury, an assumption in which we cannot indulge.

The requested charge is, in our opinion, in the nature of a general charge upon the law not authorized under that portion of Rule 277, T.R.C.P., providing that " * * * In submitting special issues the court shall submit such explanatory instructions and such definitions of legal terms as shall be necessary to enable the jury to properly pass upon and render a verdict on such issues * * *."

There was no necessity for the jury to be informed regarding the income tax law in order to properly answer the damage issues and we believe there was no error in refusing to give the requested charge.

■ Point Eleven complains of the manner in which the court submitted the question of damages in Special Issue No. F–1 and in refusing to submit its requested Special Instruction No. 31.

These objections and instructions are to the effect that the court did not limit the jury to the pecuniary value of the various elements of damage and did not instruct the jury that no item of damage not mentioned should be considered.

We find no merit in these complaints.

The charge seems to be in a form of general use. See Liecks Legal Trial Aid (1951 Revised) pp. 68–69, and cases there cited.

The first sentence of the issue inquires as to "what amount of money" if paid now would reasonably compensate appellees for their damages. The court in listing the items which might be considered in fixing the amount of damages did not repeat as to each such item that only the pecuniary value of such item should be considered. This was unnecessary. The court had instructed once that monetary value was the proper standard and repetition was neither required nor desirable.

■ The issue instructed the jury that it might consider certain items in arriving at the amount of damages and that it might not consider other items. There was no general instruction that no item of damage not mentioned should be considered. This was not error in the absence of evidence from which damages may have been improperly assessed. Cree v. Miller, Tex. Civ.App., 255 S.W.2d 565, Eastland, writ ref., N.R.E.

■ Furthermore we are of the opinion that the objections made to such issue on this score violated Rule 274, T.R.C.P., which makes untenable objections obscured or concealed by unfounded objections.

Appellant made twenty seven objections to the court's charge covering sixteen transcript pages. The objections to this issue is in one single paragraph more than two pages long and the specific objections now complained of are interspersed among many unfounded objections and are therefore untenable.

■ Point Twelve is that the jury verdict was excessive. A total of $58,000 (not including $750 property damage and funeral expenses) was apportioned among the widow and children as follows: Mrs. McFerrin $25,000, Robert, age 17, $2,000, Norman, age

---

3. We refer to an annotation on this subject in 9 A.L.R.2d p. 320, where it is stated that the general rule is that in fixing damages for impaired earning capacity the exemption from taxes of an award in such cases is not to be taken into consideration.

15, $3,000, Naomi and R. E., Jr., ages 13 and 11, respectively $4,000 each, Edith, Betty, Kathryn and Sandra Lee, ages 8, 7, 5 and 3, respectively $5,000 each.

The evidence showed that the deceased, R. T. McFerrin was 37 years of age at the time of his death and was in good health and had a life expectancy of 30.35 years. Mrs. McFerrin was 35 years of age at that time and also in good health.

Deceased was employed for the Santa Fe Railway Company at the time of his death, and was working as a locomotive fireman at the time. He was promoted on January 24, 1947 to the rank of locomotive engineer. He was earning $5,620.12 per year as a locomotive fireman. An official of the Santa Fe Railway Company testified that in all likelihood in the future years the deceased would have become more or less regularly employed as an engineer, and that an engineer draws more money than a fireman.

The evidence further showed that the deceased provided the plaintiff, Mrs. McFerrin, and her eight minor children with all of the necessities and needs of life, and that he was a good provider. He used all of the money that he earned for the support of her and his eight children. He was interested in seeing that his children were properly educated and had, from time to time, discussed this with Mrs. McFerrin. He had made plans to see that each of his children received at least a high school education and, if possible, was sent to college. The oldest child had graduated from high school, and was valedictorian of the Senior Class at Holland High School.

The deceased was a man of good moral habits and gave his children assistance, care, training and counsel throughout his lifetime. He helped them with their various problems from time to time. He was helpful around the home and assisted Mrs. McFerrin at all times. He did all of the small repairs around the house, keeping up the home, doing housework, and doing the laundry for Mrs. McFerrin and the children. He had a garden and worked it for his family.

Mrs. McFerrin went only as far as the ninth grade in school and had no special training that would equip her to work or earn a living. All she knew was housework.

Robert married about January 1, 1953, and established his own home sometime in February of that year. At the time of trial, March 1954, he had been self supporting for six or eight months.

In our opinion the verdict was not excessive. Cases sustaining comparable verdicts are: Younger Bros. v. Marino, Tex.Civ. App., 198 S.W.2d 109, Galveston, writ ref., N.R.E.; Industrial Fabricating Co. v. Christopher, Tex.Civ.App., 220 S.W.2d 281, Galveston, writ ref., N.R.E.; Roy L. Jones Truck Line v. Johnson, Tex.Civ.App., 225 S.W.2d 888, Galveston, writ ref., N.R.E.

The last point is that the court erred in permitting Mrs. McFerrin to testify regarding the habit of deceased to stop, look and listen before attempting to cross the Oak Center crossing.

The record shows that Mrs. McFerrin was the first witness testifying on the trial and before it was made known to the court that there was an eye witness, appellant's fireman, to the collision and she was questioned as follows:

"Q. All right now, I will ask you if you have ever crossed that Center Oak crossing of the MKT, I will call it the Katy crossing, the Center Oak crossing, have you ever crossed over that crossing in a car with your husband? A. Yes, sir.

"Q. When he was driving the car? A. Yes, sir.

"Q. I will ask you whether or not he always stopped and looked and listened before proceeding onto the crossing? A. Yes, sir, he did."

Thereupon appellant interposed the objection:

"* * * that what the deceased did at the times when he was with Mrs. McFerrin would not be any evidence as to what he did at this particular time, and the only material evidence would be as to whether he stopped at the time and on the occasion of this accident."

After some discussion between the court and counsel the court instructed counsel for appellees to reframe the question and at appellant's request instructed the jury to disregard the above testimony. Thereupon Mrs. McFerrin testified:

"Q. Mrs. McFerrin, have you ever ridden in this automobile of your husband's with him when he would be driving the car and as he approached the Center Oak Crossing of the Katy Railroad from the west? A. Yes, sir, I have.

"Q. Have you ever ridden with him under those conditions? A. Yes, sir.

"Q. I will ask you to state to the jury whether he ever drove his car across that crossing, while you were in the car with him and he was driving, without his first stopping the car and looking and listening for trains? A. No, sir, he never did."

Appellant's counsel then stated: "The same objections, if the court please," which the court overruled.

There was never any motion to strike this testimony. The rule is that if a question calls for inadmissible evidence proper objection should be made before the witness answers. An objection thereafter is too late. See 41-B Tex.Jur. Sec. 134 and cases there cited. This point is overruled.

The judgment of the trial court is affirmed.

Affirmed.