ELLA F. SCHRAYER, ADMINISTRATRIX, *vs.* HUBERT E. BISHOP ET AL.

Third Judicial District, New Haven, June Term, 1918.
PRENTICE, C. J., RORABACK, WHEELER, BEACH and SHUMWAY, Js.

After delivering a motor-truck load of merchandise, the defendants' servant, on his return trip, about half past twelve o'clock, deviated from the direct route to go to his own home for dinner, and while so doing collided with the plaintiff's intestate, a boy of fifteen, who was riding a bicycle in the opposite direction. Evidence offered by the plaintiff, though contradicted by the defendants, tended to prove that the servant had for two years or more been accustomed to use the motor-truck to go to his dinner with the knowledge and consent of the defendants' manager. *Held* that under these circumstances the defendants could not complain of the charge of the trial court which permitted the jury to determine

Schrayer *v.* Bishop.

as a question of fact whether the servant was acting within the scope of his employment at the time of the accident.

Respecting the duty of the boy, the jury were instructed that he, too, was bound to use reasonable care, but that the law did not ordinarily ask of a boy the same care that it expected from a man; that the boy must exercise such degree of care as might reasonably be expected from an ordinarily prudent boy of his years similarly circumstanced; that he could not be heedless, but was bound to use his faculties and do what he reasonably could to avoid threatened danger. *Held* that these instructions correctly defined the duty of the plaintiff's intestate.

With respect to damages, the jury were told that so far as they could, they were to base them upon the loss that would come to the estate of the decedent by reason of his untimely death, or in other words to award a sum which would fairly compensate for the loss of net earnings during the period of the decedent's expectancy after he reached twenty-one. *Held* that while this instruction did not contain all the elements of damage, it did the defendants no harm; and that the evidence was sufficient to sustain the verdict of $5,000.

The estate of a decedent whose death is caused by negligence, is entitled to some damages for the death alone, without considering the decedent's expectation of life or his probable accumulations.

Argued June 4th—decided July 23d, 1918.

ACTION to recover damages for personal injuries resulting in the death of the plaintiff's intestate and alleged to have been caused by the negligence of the defendants, brought to the Superior Court in Fairfield County and tried to the jury before *Maltbie, J.;* verdict and judgment for the plaintiff for $5,000, and appeal by the defendants. *No error.*

*Carl Foster,* for the appellants (defendants).

*Nehemiah Candee* and *John F. Dwyer,* for the appellee (plaintiff).

SHUMWAY, J. The material facts which present the question of law the defendants raised by the appeal are these: The plaintiff's intestate, George L. Kavano, a boy about fifteen years old, was killed on April 19th,

1917. He was struck by an automobile truck on Main Street, in the city of Norwalk. He was riding a bicycle and George Ayrault was driving the truck. Ayrault was employed by the defendants as a truck driver at the time. He was returning from a trip made to deliver merchandise for the defendants. It was about half past twelve o'clock, and it was his intention to go home for his dinner. Ayrault had been accustomed to use the truck to go to his house for dinner, from two to four times a week, for a period of from two to four years, with the knowledge and consent of the employer's manager. No question is made on the appeal that the injury to the plaintiff's intestate was not caused in part at least by Ayrault's negligence.

The defendants claim that the court erred (1) in submitting to the jury, as a question of fact, whether Ayrault at the time was acting within the scope of his employment; (2) in charging the jury upon the question of Kavano's duty, as a boy of fifteen years, to exercise reasonable care; and (3) in charging the jury on the measure of damages.

The first question above stated has been before this court in a number of cases, from *Stone* v. *Hills*, 45 Conn. 44, to *Carrier* v. *Donovan*, 88 Conn. 37, 89 Atl. 894. But the rule in this State is laid down in *Ritchie* v. *Waller*, 63 Conn. 155, 28 Atl. 29, and is the one uniformly applied. In the last case the court uses this language (p. 161): "In cases where the deviation is slight and not unusual, the court may, and often will, as matter of law, determine that the servant was still executing his master's business. So too, where the deviation is very marked and unusual, the court in like manner may determine that the servant was not on the master's business at all, but on his own. Cases falling between these extremes will be regarded as involving merely a question of fact, to be left to the jury."

The court in leaving to the jury, as a question of fact, whether this act of the defendants' servant, in intending to go home to his dinner under the circumstances, was a departure from his master's service, was as favorable to the defendants as the facts in the case permitted. Ayrault was on his return trip; the outward trip was confessedly in the line of his employment, and it cannot be said that a simple intention on his part to go home with the truck for his dinner, with the consent of his employer, was a departure from his master's business. The deviation, if any, may have been so slight that the court might have properly instructed the jury as a matter of law that the servant was acting within the scope of his employment. It does not appear how far from the most direct route to defendants' yard, where presumably the truck was placed when not in use, Ayrault had departed at the time of the accident, but it does appear that the direct route from the point where he came upon Main Street, after delivering his load of merchandise, was in a southerly direction, while he turned to go northerly. It would not be contended that if Ayrault's house had been on the direct route to the yard, his purpose to stop for his dinner on the way would be a departure from his master's business, and neither can it be said as a matter of law that taking a more indirect way constituted such departure, because, so far as appears, the deviation may have been so small as to be no deviation at all, even if it is assumed that it was his intention to depart wholly from the master's service.

Upon the question of due care on the part of the boy Kavano, the court said: "The same rule applies to the boy with reference to what he should do as applies to the man; each must use reasonable care; but there is this distinction: you do not ordinarily ask of a boy the same care which you ask of a man, and the law does not.

The law says that what a boy must do is to use that degree of care which a boy of the same degree of intelligence, of the same age, of the same experience, might reasonably be expected to exercise. It is not now the care of an ordinarily prudent man, it is the care of an ordinarily prudent boy similar to the boy in question in these various respects. So that the burden which rests upon the plaintiff in regard to the care which this boy should exercise is, did he act as a boy of that age and experience and intelligence and general surroundings might be expected to act?"

This extract may be open to objection if stated in connection with Ayrault's duty under the circumstances, because it would not be his duty to use the same precautions to avoid injury to this boy that he would be required to use with a child just beginning to walk. He is only bound to regulate his conduct by that which by due attention he could see. He could not see the boy's intelligence and experience in life. But the court also said: "The boy cannot be heedless and careless. . . . He is bound to use his faculties. He is bound to do what he can reasonably to avoid injury, to see and hear and use generally his faculties; and if he finds himself in a position where danger is imminent, he is bound to do what he can reasonably to avoid it." This correctly defines the duty of the plaintiff's intestate.

The court charged the jury in regard to the damages in substantially the language of this court in *Broughel* v. *Southern New England Telephone Co.*, 73 Conn. 614, 48 Atl. 751, as follows: "Just as far as you can you base it on the loss which would come to his estate by reason of his untimely death." But the trial court said further: "So that the rule, as I say, is the lump sum which will fairly give compensation for the loss of the net earnings for the space of time which you may fairly

expect this boy to live after he gets to be twenty-one." The rule thus stated does not contain all the elements of damage named in the case above cited. However, as stated, it did the defendants no harm. Quoting from that case (p. 620): "Under these statutes the right to recover a limited compensation for death alone, as one of the results or consequences of a wrong inflicted upon a man in his lifetime, survives to, or is vested in, his executors or administrators for the benefit of certain designated beneficiaries, and is thus in a certain sense made a part of his estate, regarded as that aggregate of rights and possessions which a man leaves at his death." So the law is that a man's estate is entitled to some compensation for death alone, without wandering into the somewhat hazy realm of an individual's expectation of life or his probable accumulations, though these latter are in some cases proper subjects of consideration on the question of damages.

The evidence was sufficient to sustain the verdict for the damages awarded in this case.

There is no error.

In this opinion the other judges concurred.