JOHN GORHAM *v.* FARMINGTON MOTOR INN, INC.

ALCORN, C. J., HOUSE, THIM, RYAN and SHAPIRO, Js.

Argued June 4—decided July 7, 1970

*William R. Moller,* with whom, on the brief, was *John J. Langenbach,* for the appellant (defendant).

*A. Arthur Giddon,* with whom, on the brief, was *John P. McKeon,* for the appellee (plaintiff).

THIM, J.   On October 19, 1965, the plaintiff attended an awards dinner given by his employer at The Corner House Restaurant in Farmington, which is owned and operated by the defendant.   After dinner the plaintiff, together with others, went to the cocktail lounge to have a drink.   While there, and in an attempt to locate the men's room, the plaintiff walked through an exit door, fell, and injured his leg.   He alleged that the fall was caused by a dangerous condition negligently maintained by

the defendant. The case was tried to a jury, which found the issues for the plaintiff as against the defendant and awarded him $70,000 damages. The defendant has appealed to this court from the judgment rendered on the verdict.

We shall first consider the assignments of error directed to the court's rulings upon the admissibility of certain evidence. During the trial Alice G. Curran was called as a witness by the defendant. Mrs. Curran was employed as a waitress at the restaurant at the time of the injury. Over the defendant's objection Mrs. Curran testified on cross-examination that she had observed cocktail glasses at the table where the plaintiff had been sitting. Also over the defendant's objection a written statement signed by Mrs. Curran before trial in the presence of counsel for the defendant was admitted. There is no need to decide the correctness of the court's rulings as to the statement and testimony in question because they were harmless. See *Burke* v. *Fancher,* 151 Conn. 640, 643, 201 A.2d 461; 58 Am. Jur., Witnesses, § 672. The defendant admits in its brief that the written statement was not inconsistent with Mrs. Curran's testimony, so no claim can be made that the witness' credibility was unfairly impinged upon. Furthermore, the material contained in the statement, together with the testimony which was objected to, would have been favorable to the defendant if believed by the jury, as it indicated that the plaintiff may have been drinking heavily. The evidence would thus tend to prove the allegations contained in the defendant's special defense as to general contributory negligence. In fact, at the time the rulings were made, the defendant's special defense that the plaintiff was intoxicated at the time of the injury had not yet been withdrawn. It is a settled rule of law that

the admission of evidence which favors the appellant cannot be a ground of error. Maltbie, Conn. App. Proc. § 39.

In the only other assignment of error directed to a ruling on evidence, the defendant claims that the court erred in excluding testimony to the effect that, pursuant to the provisions of the plaintiff's employment contract, his medical expenses and wages were paid in full despite the time he lost from work, and thus the extent of his damages tended to be lessened. This claim amounts to an attack on what has been termed the collateral source rule, which provides that benefits received by a plaintiff from a source wholly collateral to and independent of the tortfeasor will not diminish the damages otherwise recoverable. 22 Am. Jur. 2d, Damages, § 206. "Where the plaintiff during the period of his disability receives salary or other compensation from his employer, the rule followed or approved in most jurisdictions is that the person whose negligence caused the injury to [the] plaintiff is not entitled to mitigate or reduce damages in whole or in part by the amount of salary or wages received by [the] plaintiff from his employer during the period of disability, whether the payments were pure gratuities or paid pursuant to a contractual obligation . . . ." Note, 7 A.L.R.3d 516, 519. The majority rule in this country likewise prohibits the tort-feasor from taking advantage of the fact that his victim's medical expenses were paid in whole or in part by hospitalization insurance. 22 Am. Jur. 2d, Damages, §§ 207, 210. The collateral source rule, both as to medical payments and loss of earning capacity, has long been in effect in this jurisdiction, as the defendant recognizes. See, e.g., *Acampora* v. *Ledewitz,* 159 Conn. 377, 384, 269 A.2d 288; *Lashin* v. *Corcoran,* 146

Conn. 512, 515, 152 A.2d 639; *Carangelo* v. *Nutmeg Farm, Inc.,* 115 Conn. 457, 461, 162 A. 4; *Johnson* v. *Charles William Palomba Co.,* 114 Conn. 108, 114, 157 A. 902; *Hayes* v. *Morris & Co.,* 98 Conn. 603, 607, 119 A. 901; *Roth* v. *Chatlos,* 97 Conn. 282, 287, 116 A. 332. The reason for the rule given by a majority of the jurisdictions which have adopted it is that a "windfall" ought not to be granted to a defendant. 22 Am. Jur. 2d, Damages, § 206. "If there must be a windfall certainly it is more just that the injured person shall profit therefrom, rather than the wrongdoer shall be relieved of his full responsibility for his wrongdoing." *Grayson* v. *Williams,* 256 F.2d 61, 65 (10th Cir.). We see no reason to accept the defendant's position and overrule the collateral source rule as it has long existed in Connecticut and in a majority of jurisdictions in this country. There is accordingly no error in the court's refusal to admit the evidence in question.

Error has been assigned in the court's failure to charge, as the defendant requested, that any award given the plaintiff is tax free and not subject to any income tax whatever. The great weight of authority in the United States is committed to the rule that, in an action to recover damages for personal injuries, an instruction such as is now under consideration is improper and, when requested, should be refused. See, e.g., *Kawamoto* v. *Yasutake,* 49 Haw. 42, 51, 410 P.2d 976; *Hall* v. *Chicago & N.W. Ry. Co.,* 5 Ill. 2d 135, 152, 125 N.E.2d 77; *Spencer* v. *Eby Construction Co.,* 186 Kan. 345, 350, 350 P.2d 18; *Louisville & N.R. Co.* v. *Mattingly,* 318 S.W.2d 844, 848 (Ky.); *Briggs* v. *Chicago Great Western Ry. Co.,* 248 Minn. 418, 432, 80 N.W.2d 625; *Bracy* v. *Great Northern Ry. Co.,* 136 Mont. 65, 74, 343 P.2d 848, cert. denied, 361 U.S. 949, 80 S. Ct. 403, 4 L. Ed. 2d 381; *Hardware*

*Mutual Casualty Co.* v. *Harry Crow & Son, Inc.,* 6 Wis. 2d 396, 405, 94 N.W.2d 577; note, 63 A.L.R.2d 1393.

The defendant relies heavily on *Dempsey* v. *Thompson,* 363 Mo. 339, 251 S.W.2d 42, wherein the Missouri court held it proper to instruct the jury that any award of damages is not subject to federal income tax and that said tax should not be considered in fixing the amount of damages. We do not concur with the holding in the *Dempsey* case. The majority rule is to the contrary. The injection of the question of income tax liability is likely to give rise to more problems than it would solve. See *Spencer* v. *Eby Construction Co.,* supra, 350–54, where the leading cases are collected and considered. Rejecting the rule in the *Dempsey* case, the Illinois Supreme Court in *Hall* v. *Chicago & N.W. Ry. Co.,* supra, 151, said: "It is a general principle of law that in the trial of a lawsuit the status of the parties is immaterial. Thus, what the plaintiff does with an award, or how the defendant acquires the money with which to pay the award, is of no concern to the court or jury. Similarily [sic], whether the plaintiff has to pay a tax on the award is a matter that concerns only the plaintiff and the government. The tort-feasor has no interest in such question." The defendant's contention that, if the instruction is not given, the jury are likely to adjust their verdict upward to offset any income tax liability is based on an unjustified assumption that the jury will not confine themselves to the evidence or to the court's charge. "This is to assume that there will be misconduct on the part of the jury, an assumption in which we cannot indulge." *Missouri-Kansas-Texas R. Co.* v. *McFerrin,* 279 S.W.2d 410, 419 (Tex. Civ. App.), rev'd on other grounds, 156 Tex. 69, 291 S.W.2d 931.

The other case cited in the request to charge for the proposition that any award given to the plaintiff was tax free and not subject to any income tax whatever was *Floyd* v. *Fruit Industries, Inc.*, 144 Conn. 659, 136 A.2d 918. In *Floyd* we held that, in computing damages for wrongful death, any saving of income tax liability which can be attributed to a permanent and total cessation of earned income must be considered. Id., 671. The *Floyd* case did not hold that the jury should be instructed concerning the federal tax liability of a plaintiff in respect to any award given to him in the verdict to be rendered. Thus *Floyd* is readily distinguishable and does not support the defendant's position.

We conclude that the court did not err in refusing to charge as requested by the defendant.

The defendant attacks the court's charge in two other respects. It first claims that the court should not have informed the jury as to which party requested certain portions of the charge. Although we do not approve of such a procedure, in the absence of anything incorrect at law the giving of requests in this manner is not in itself reversible error, unless the jury were misled; see *Bridgeport L. A. W. Corporation* v. *Levy*, 110 Conn. 255, 262, 147 A. 841; nor does the fact that the court was mistaken occasionally as to which party requested a given charge require reversal. A charge is examined to see if it fairly presented the case to the jury in such a way that no injustice was done to the legal rights of the litigants; it is not examined in a manner which would search out technical flaws or inexact, inadvertent or contradictory statements. *Borsoi* v. *Sparico*, 141 Conn. 366, 371, 106 A.2d 170; *Pratt, Read & Co.* v. *New York, N.H. & H.R. Co.*, 102 Conn. 735, 740, 130 A. 102. In fact, the court stressed in a supplemental

charge to the jury the irrelevancy of which party had requested a charge, so even had there been error it was cured.

Other parts of the charge complained of relate to the court's discussion of the evidence. We have carefully examined the charge as a whole and have determined that in no particular did it unfairly submit the issues of fact. *Mercer Electric Mfg. Co.* v. *Connecticut Electric Mfg. Co.,* 87 Conn. 691, 698, 89 A. 909. The degree to which reference to the evidence may be called for lies largely in the discretion of the court. *Worden* v. *Francis,* 153 Conn. 578, 580, 219 A.2d 442. Furthermore, the charge sufficiently stated the principle that it was the jury's sole province to deal with the facts and that comments by the court serve only to clarify principles of law. *Burke* v. *Fancher,* 151 Conn. 640, 642, 201 A.2d 461. This statement was reiterated by the court in a supplemental charge so that the jury would not be confused as to their duty.

The defendant's final claim is that the amount of the verdict was excessive. The court denied a motion to set aside the verdict as being excessive and has set forth its reasons in a memorandum of decision. The ruling of a trial court on such a motion is entitled to great weight; see, e.g., *Vogel* v. *Sylvester,* 148 Conn. 666, 669, 174 A.2d 122; and we think that the following excerpt from the memorandum of decision is particularly pertinent: "Upon the evidence the jury could reasonably have found the following facts. At the time of trial the plaintiff was 60 years of age and had a life expectancy of 16 years. At the time of the injury on October 19, 1965, the plaintiff had a stiff left leg as his knee was ankylosed because of a condition of osteomyelitis in the bones of the leg and knee. This condition rendered the leg 50%

disabled. Though he walked with a limp, he was able, in addition to carrying out his duties as Chief Accountant for the Newington Hospital for Crippled Children, to perform such household duties as mowing the lawn, cutting and trimming bushes, and the like. As a result of the fall the plaintiff sustained a compound fracture through an old area of fusion of the left knee. There was a disruption of the bones so that the knee opened in front. He was hospitalized from October 19 to November 4, 1965 and again for a period from February 18 to March 2, 1966. The leg was in a plaster cast from the time of the injury to May, 1966, at which time a strong leather cast which encased the leg and knee was applied. The plaintiff will be required to wear the leather cast for the remainder of his life, excepting when he goes to bed nights, at which time he is required to bandage the knee to prevent movements of the bones of the knee. For a period of approximately 10 months following the injury the plaintiff suffered infection of the left leg caused by the movement of the bones of the knee. This infection required periodic draining of the same. It is anticipated that movement of the bones of the knee will cause further infection so that the plaintiff will have to be under medical supervision for the remainder of his life. It is not probable that the fracture which the plaintiff sustained will unite by reason of the osteomyelitis in the bones of the knee, and surgical intervention to ankylose the knee cannot be undertaken without creating a hazard to the plaintiff because of his susceptibility to clotting of the blood and pulmonary embolism from a phlebitis. The plaintiff's medical expenses to the date of the trial amounted to $2946.00. He was out of work full time from October 19, 1965 to November 27, 1965 and

from February 9, 1966 to March 5, 1966, and was out of work part time from November 28, 1965 to December 4, 1965. He also lost approximately 10 days from his work in February, 1967 and one week in October, 1968. As of the date of trial the plaintiff had an 80% permanent disability of the left leg. While the verdict in this case is large and generous, the court cannot say that it is excessive".

The defendant cites cases in its brief as authority for its claim that the award of $70,000 was excessive, but we have held that comparisons with amounts in other verdicts serve little purpose. *Lopez* v. *Price,* 145 Conn. 560, 568, 145 A.2d 127; *Fairbanks* v. *State,* 143 Conn. 653, 661, 124 A.2d 893. On the evidence presented, there was no error in the refusal of the court to set the verdict aside. See *Verrillo* v. *Green,* 155 Conn. 694, 695, 230 A.2d 20; *Sadonis* v. *Govan,* 132 Conn. 668, 670, 46 A.2d 895.

There is no error.

In this opinion the other judges concurred.