[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action arises out of a motor vehicle accident. On July 11, 1990, a motor vehicle driven by Andre L. Johnson collided into the motor vehicle in which the plaintiff's decedent, Brian K. Cretens, was a passenger. As a result of the accident, Cretens sustained severe injuries and died. The plaintiff, J. Michael Sherb in his capacity as administrator of the estate of the decedent, alleges that the accident and Creten's death were caused by the negligent maintenance and operation of an automobile by Johnson. Johnson, however, did not carry any automobile insurance.
The plaintiff therefore brought this action on July 23, 1991 against the defendants, The Travelers Indemnity Company (hereinafter Travelers) and Lumbermens Mutual and casualty Company. The plaintiff alleges that the defendants provided uninsured motorist coverage to the defendant, and that the policies were in effect at the time of the accident. The plaintiff claims fair and reasonable compensatory money damages.
On October 17, 1991, the defendant Travelers filed an answer containing two special defenses. The first special defense states that the acts of Johnson which brought about, the accident were intentional, and that therefore, there is no coverage under the Travelers policy. The second special defense states that Travelers is entitled to all applicable setoffs.
The plaintiff filed a motion to strike both special defenses on November 1, 1991 on the grounds that (1) the first CT Page 4982 special defense is "in contravention of statutory and regulatory mandates and as such is also void as against public policy;" and (2) the second special defense is premature and inappropriate.
DISCUSSION
The motion to strike tests the legal sufficiency of a pleading. Practice Book Section 152; Ferryman v. Groton,212 Conn. 138, 142, 561 A.2d 432 (1989). A trial court should consider only the grounds specified in the plaintiff's motion. Meredith v. Police Comm'n, 182 Conn. 138, 140, 438, A.2d 27 (1980).
The motion to strike "admits all facts well pleaded; it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings. Mingachos v. CBS, Inc.,196 Conn. 91, 109, 491 A.2d 368 (1985). The facts alleged are to be construed in a way most favorable to the nonmoving party. Amodio v. Cunningham, 182 Conn. 80, 82, 438 A.2d 6
(1980). In deciding the plaintiff's motion to strike, "the court [is] obligated . . . to assume the truth of the allegations contained in the defendant[s] special defense[s]. . . ." Ivey, Barnum O'Mara v. Indian Harbor Properties, Inc., 190 Cond. 528, 530 n. 2, 461 A.2d 1369 (1983).
I. First Special Defense
Traveler's first special defense states simply that the acts of Andre Johnson were intentional and that therefore, there is no coverage under the policy. It should be noted that the first special defense provides no allegations as to the essential elements of an intentional tort, and therefore, the special defense is technically defective. County Federal Savings Loans Assn. v. Eastern Associates, 3 Conn. App. 582,586, 491 A.2d 401 (1985). However, since "the trial court is limited to considering the grounds specified in the motion," Meredith v. Police Comm'n, supra, and since the plaintiff has not raised this issue, the fact that the defendant has not alleged facts to support its legal conclusion is not an appropriate reason to grant the motion to strike. Since the court is obligated to assume the truth of the allegations contained in the special defense; Ivey, Barnum O'Mara v. Indian Harbor Properties, Inc., supra; the court should assume that the uninsured motorist intentionally collided into the car in which the plaintiff's decedent was a passenger.
The plaintiff argues that the exclusion of intentional torts from coverage "contraven[es] statutory and regulatory mandates." He argues that General Statutes Section CT Page 498338a-336 (a)(1), which requires insurers to provide uninsured motorists coverage to protect those legally entitled to recover damages, does not distinguish between intentional torts and negligence so long as the insured is legally entitled to recover, and that such coverage is mandatory. Furthermore, the plaintiff contends that Connecticut Insurance Regulation Section 38-175a-6 (c) enumerates exclusions without including intentional torts. Based on this, the plaintiff maintains that the insurance contract conflicts with both the statute and the regulation, and that it must be read in accordance with both. Finally, the plaintiff asserts that the public policy in Connecticut favors indemnification of victims unless they are responsible for the accident, and that the "public policy . . . is that every insured is entitled to recover for the damages that he or she would have been able to recover if the uninsured motorist had maintained a policy of liability insurance."
In support of his arguments, the plaintiff has submitted copies of cases from foreign jurisdictions, and other authority holding that whether or not an injury is "accidental" must be determined from the victim's point of view, and that therefore, an intentional act by the uninsured motorist may result in an "accident" for the purposes of uninsured motorist coverage.
The defendant argues that the plaintiff assumes in all of his arguments that an intentional tort can cause an accident. The defendant further argues that it is not required to provide uninsured motorist coverage for intentional torts, and that public policy favors indemnification of only accident victims. In support of this argument, the defendant cites Connecticut Insurance Regulations Section 38-175-6 (a), which obligates insurers to provide coverage for injuries "caused by an accident." The defendant has submitted copies of cases from foreign jurisdictions, holding that an event caused, by the intentional act of an uninsured motorist cannot be an accident. Furthermore, the defendant maintains that while an insured is entitled to recover the damages he or she would have been able to recover if the uninsured motorist had maintained a liability policy, the policy would have excluded intentional acts.
The underlying issue is whether the uninsured motorist statutes and regulations require coverage for this type of collision. The resolution of this issue terms on how the word "accident" under Section 38-175a-6 (a) of the insurance regulations is interpreted. However, the term "accident" as used in the regulations has not been defined in Connecticut's uninsured motorist statutes, regulations, or CT Page 4984 case law.
The uninsured motorist statute, General Statutes Section 38a-336, provides that every automobile liability policy "shall provide insurance, herein called uninsured motorist coverage, in accordance with the regulations . . . for the protection of persons insued thereunder who are legally entitled to recover damages from owners or operators of uninsured . . . and underinsured motor vehicles . . . because of bodily injury, including death resulting therefrom." The regulations implementing this statute provide that the minimum protection that must be provided against uninsured motorists is payment of damages that the insured would be legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured caused by an accident involving the uninsured motor vehicle because of bodily injury sustained by the insured caused by an accident involving the uninsured motor vehicle. Regs., Conn. State Agencies Section 38-175a-6.
"The regulations . . . must carry into effect the purpose and intent of the statute pursuant to which they are enacted . . . A limitation of liability on uninsured or underinsured motorist coverage must be construed most strongly against the insurer. American Universal Ins. Co. v. DelGreco,205 Conn. 178, 196, 530 A.2d 171 (1987). "The regulatory language [relied on] must be read . . . in light of this principle as well as the language and intent of [Section38a-336]." Id., 197.
The Connecticut Supreme Court interprets the uninsured motorist statute from the perspective of the person covered. Covenant Ins. Co. v. Coon, 220 Conn. 30, 34 n. 5,594 A.2d 977 (1991). Therefore, the term "accident" as used in the regulations implementing the statute should be interpreted from the point of view of the insured.
"Accident" is defined as "1. An unexpected and undesirable event. 2. Something that occurs unexpectedly or unintentionally. . . . 3. Fortune or chance. . . ." American Heritage Dictionary 71 (2d college ed. 1985). From the viewpoint of the insured, an event is an accident if the insured did not expect, desire or intend it.
A superior court decision discussing the meaning of "accident" as used in a motor vehicle insurance policy concluded that:
[t]here is no public policy which mandates CT Page 4985 or even suggests that, in UM coverage questions, an incident should be viewed through the eyes of the wrongdoer to determine if the insured was the victim of an "accident." The tortfeasor is not a party to the contract of insurance. His intent or purpose is immaterial. He will not benefit from his, wrongful conduct. The insured's UM carrier should not be permitted to benefit from an inappropriate interpretation, of the word "accident" contained in its policy of insurance. So far as uninsured motorist coverage is concerned, the question of whether there was an "accident" must be evaluated from the viewpoint of the insured."
Middlesex Mutual Assurance Co. v. Walsh, 1 Conn. L. Rptr. 51, 53 (1989), quoting Sciascia v. American Ins. Co., 183 N.J. Super. 352,443 A.2d 1118, 1120 (1982).
Other jurisdictions which have interpreted the word "accident" from the point of view of the insured have reasoned that where uninsured motorist coverage in concerned, the injured parties pay premiums as part of a contract with an insurance carrier for protection, and that what the insured intended should determine whether the acts are accidental or intentional. Leatherby Insurance Company v. Willoughby, Fla. App. ___, 315 So.2d 553, 554 (1975), quoting Celina Mutual Insurance Company v. Saylor, 35 Ohio Misc. 81,301 N.E.2d 721, 723 (1973). It was further reasoned that "[t]o look through the eyes of the uninsured rather than the insured in this factual situation would require an unconscionable twisting of the obvious purpose of purchasing insurance coverage." Id., 554-555.
Furthermore,
 "In regard to uninsured motorist coverage, it is particularly appropriate to examine the occurrence from the viewpoint of the injured party rather than from that of the aggressor. While the injury may be intentionally inflicted by the aggressor, to the extent that the assault is unprovoked and/or unexpected from the injured person's standpoint the damages are just as accidential as if he had been negligently struck. Therefore, there is almost no reason . . . to consider the CT Page 4986 accident from any viewpoint but that of the injured person, except in the event the claimant provoked the assault."
A. Widiss, A Guide to Uninsured Motorist Coverage 95 (1970).
In conclusion, under Section 38-175a-6 of the insurance regulations, "accident" must be interpreted from the point of view of the insured. Thus a collision caused by the intentional act of the uninsured motorist is an "accident" within the meaning of Section 38-175a-6 of the regulations, and without an allegation that the insured intended the collision, this special defense is legally insufficient. Therefore, the motion to strike the first special defense is granted.
II. Second Special Defense
The second special defense claims a set off for any payment made to the plaintiff from any collateral source. The plaintiff argues that this special defense is improper because a special defense is raised for the purpose of offering evidence on the issue contained in the special defense, but that Section 52-225a makes collateral source payments a matter for the court and not the trier of the fact to address after the conclusion of the trial. The plaintiff further argues that the defendant has made no allegation that the plaintiff received any collateral source payments. The plaintiff's argument with regard to contribution will not be considered since the defendant did not seek contribution.
The defendant argues that it is merely asserting a right that is "well established in the law," that whether any such payments have been made is a matter of fact to be determined, and that "[no] harm will come to the claimant by leaving the defense as is."
There is a split authority as to whether a set off for collateral source payments may be claimed in a special defense. However, the better view is that such a set off may not be claimed as a special defense. This also appears to be the majority view.
General Statutes Section 52-225a(a) provides that where liability is found by the trier of fact and damages are awarded, "the court shall reduce the amount of such award which represents economic damages . . . by an amount equal to the total of amounts determined to have been paid under subsection (b) of this section less the total of amounts determined to have been paid under subsection (c) of this CT Page 4987 section. . . ." Subsection (b) provides that "upon a finding of liability and an awarding of damages by the trier of fact and before the court enters judgment, the court shall receive evidence . . . concerning the total of collateral sources which have been paid for the benefit of the claimant. . . ." General Statutes Section 52-225a(b).
A special defense is raised for the purpose of offering evidence on a legal issue or concept contained in the special defense at the time of trial. Air Flo, Inc. v. Consolidated Engineers and Constructors, Inc.,5 Conn. L. Rptr. 460, 461 (February 10, 1992, Fuller, J.). However, raising a right to a set off as a special defense is unnecessary to obtain the benefits allowed by Section 52-225a
because the court is required by the statute to make appropriate adjustments after the trial. Id. The statute "indirectly precludes evidence at the trial of collateral source payments to reduce damages. . ." Id.
Moreover, a review of the legislative history of the statute reveals that the legislative intended that "evidence of collateral source payments should not be introduced until a decision on the amount of damages has been made. . . ." Patel v. W. F. Painting, Inc., 5 Conn. L, Rptr. 428, 429 (February 3, 1992, Mihalikos, J.). Senator Avallone stated that the bill "deals with the admissibility of certain evidence after a, verdict has been reached. . . ." Id., quoting 28 S.Proc., pt. 16, 1985 Sess., p. 5436. Furthermore, Representative Nania stated that "the only time at which the fact that there is or is not insurance comes before the court is once the jury or the court if there is a trial to the court, has already made a decision as to the amount of damages." Id., quoting 28 H.R. Proc., pt. 27, 1985 Sess., p. 9860.
 1. While Practice Book Section 168 requires that a set off be pleaded as a special defense, Section 168 does not apply to a collateral source payment. A collateral source payment "cannot be considered a setoff" Air Flo, Inc. v. Consolidated Engineers and Constructors, Inc., supra. A legal setoff is a mutual debt between the parties that can be raised in an action brought for the recovery of another debt, pursuant to Section 52-139 of the General Statutes. An equitable setoff is the recognition of multiple obligations between the parties and a setoff of one against the other to prevent circuity of actions." Id.
 Furthermore, [u]ntil Section 52-225a was enacted in 1985, a defendant could not obtain a reduction for payments received by the plaintiff from collateral CT Page 4988 sources." Id., citing Gorham v. Farmington Motor Inn, Inc., 159 Conn. 576, 579, 271 A.2d 94 (1970). Therefore, Section 52-225a provides the sole means of deducting collateral source payments from the award of damages, and Practice Book Section 168 does not apply to collateral source payments.
In light of the above, since the purpose of a special defense is to raise an issue for which evidence is to be offered at the time of trial, and since evidence of collateral source payments was not meant to be introduced to the trier of fact, a set off of collateral source payments may not be asserted as a special defense. Therefore, the motion to strike the second special, defense is granted.
CONCLUSION
Because the word "accident" is to be interpreted from the point of view of the insured, the motion to strike the first special defense is granted. Since a reduction of judgment by the amount of collateral source payments is a post-verdict matter for the court to decide, the motion to strike the second, special defense is granted.
HURLEY, J.