No. 41,703

Thane H. Spencer, *Appellee*, v. Martin K. Eby Construction Company, *Appellant*.

(350 P. 2d 18)

Opinion filed March 5, 1960.

*William Tinker*, of Wichita, argued the cause, and *Getto McDonald, Arthur W. Skaer, Hugh P. Quinn, William Porter, Alvin D. Herrington, Darrell D. Kellogg*, and *Richard T. Foster*, all of Wichita, were with him on the briefs for the appellant.

*John C. Frank*, of Wichita, argued the cause, and *Tom Cunningham, Pat Kelly, Fred J. Gasser*, and *Robert Lomax*, all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Parker, C. J.: This was an action to recover damages for injuries sustained in an intersection accident between two motor vehicles on September 8, 1955, at the Boeing Airplane Company plant in Wichita, Kansas. Plaintiff recovered and the defendant appeals.

The conditions and circumstances existing just prior to the accident are not in controversy and will be stated at the outset.

Motorized vehicles are operated along a number of lanes, otherwise known as streets within certain buildings of Boeing Plant II at Wichita, the involved accident occurring at the intersection of U Avenue and Thirty-fifth Street within one of such buildings. U Avenue is a north-south through street with a fire wall running

along its west side all the way to the ceiling of the building in which the accident occurred. It has a wide lane for motorized traffic and a narrower pedestrian lane, four or five feet in width, which extends to the fire wall. The motorized traffic and pedestrian lanes are divided by a white line.

Thirty-fifth Street is an east-west street, much narrower than U Avenue. It ends at U Avenue but intersects therewith, through means of an opening sixteen feet by sixteen feet, in the fire wall which permits east bound traffic on Thirty-fifth to enter the avenue and proceed in either direction. A stop sign, painted on the floor of Thirty-fifth street, just west of the fire wall warns traffic to stop before going through the opening in the wall and entering upon U Avenue.

During the summer and fall of 1955 the defendant, Martin K. Eby Construction Company, a corporation, was engaged in the performance of general construction work at the Boeing plant with its men and equipment. Included in its employees was one Cline who, on the date of the accident, was driving one of the defendant's forklift trucks.

The forklift, usually referred to by construction workers as a "goose," is a motorized type of equipment, which is five feet long with forks extending about three feet in front. It is commonly employed in lifting and transporting heavy items upon forks or prongs, which project to the front of the vehicle and can be lowered to the level of the floor and raised like an elevator several feet high. According to photographs it appears the driver sits behind the forks and slightly behind the front wheels of the vehicle, with his view ahead partially obstructed by the elevator mechanism of the lift.

On September 8, 1955, at approximately 12 o'clock noon, Cline, who had been driving the defendant's forklift truck in an easterly direction on Thirty-fifth street, approached the intersection at U Avenue. At that time he was dragging a steel plate beneath the forklift. This plate was about sixteen feet long, one foot wide and three-fourth's of an inch thick. It was fastened to the forks which, as we have indicated, were three and one-half feet long, and projected beyond the forks another three feet. The front end of the plate was from eight to ten inches off the floor and the back end thereof was dragging on the floor.

On the morning of September 8, 1955, Thane H. Spencer, the plaintiff, a Boeing Airplane Company employee, then sixty years

of age, was engaged in his usual work of hauling material within the Boeing plant. He was driving a Model A truck, specially constructed as a light vehicle for use inside a factory. At or about the moment Cline reached the intersection of Thirty-fifth Street and U Avenue in his forklift Spencer was driving his truck on the west side of U Avenue and reached the same intersection.

The only event, occurring after the two vehicles reached the intersection, that can be classified as uncontroverted is that a collision immediately ensued.

Having related the foregoing uncontroverted facts it should now be stated the pleadings are not involved and need only be detailed to clarify the issues presented on appeal.

For present purposes it suffices to say that the amended petition charges that the involved accident and plaintiff's resulting injuries (describing them) were the direct and proximate result of and caused by the negligence and carelessness of defendant, by and through its agent and employee, Cline, and that the particular acts of negligence of the defendant included but were not limited to the following:

"(a) In driving said high-lift or goose at a high and dangerous rate of speed for the conditions prevailing;

"(b) In running the stop sign at the entrance of U Avenue and Thirty-fifth Street;

"(c) In failing to yield the right-of-way to traffic on U Avenue, which traffic had the right-of-way;

"(d) In driving through the entranceway of Thirty-fifth Street onto U Avenue when his vision was blinded and obscured, and he could not see traffic approaching on U Avenue.

"(e) In failing to maintain a proper lookout, and in failing to keep his high-lift or goose under proper control;

"(f) In so driving said high-lift or goose that he caused it to proceed into and against the rear of the truck operated by the plaintiff Spencer;

"(g) In failing to reduce his speed to avoid colliding with the truck operated by the plaintiff Spencer;

"(h) In failing to stop, swerve, turn aside or otherwise effectively control and maneuver his high-lift or goose in such a manner as to have avoided the collision;

"(i) In failing to stop at the stop sign at the entrance way of Thirty-fifth Street and U Avenue in violation of Section Nine (9) of the above described traffic regulation which provides:

"TRAFFIC SIGNS—Stop, slow and caution signs must be obeyed. When approaching intersections, blind corners or locations where visibility is limited, operators will reduce speed."

That the amended answer, after denying all material allegations of the petition, asserts that the accident and any and all injuries, if any, sustained by the plaintiff, were the result of and caused by his own acts of negligence and/or contributory negligence (describing them), which were the proximate, concurring or contributing cause of such accident or injuries to plaintiff.

And that plaintiff's amended reply denies in general terms each and every allegation of the amended answer inconsistent with the allegations of his amended petition and specifically denies that he was guilty of any of the acts of negligence or contributory negligence charged in such amended answer.

With issues joined as related the cause came on for trial by a jury. Plaintiff adduced his evidence to which defendant demurred. When this demurrer was overruled defendant adduced its evidence and plaintiff his rebuttal evidence. Thereupon defendant requested certain instructions some of which were denied. In one of the instructions denied the court was requested to instruct the jury that an award of damages for personal injuries is exempt from state and Federal income taxes. Thereafter the court gave its own written instructions, submitted special interrogatories, and directed the jury to retire to the jury room and deliberate on its verdict and answers to the interrogatories.

During the course of its deliberation the jury made inquiry to the court as to the taxability of its verdict. In response to this inquiry, over the objection of defendant, the court gave the jury the following written instruction:

"Pursuant to your verbal request as to whether or not in the event that the Jury will award the plaintiff damages, the amount would be taxable, you are instructed that you are not to consider in your deliberations the question whether or not the plaintiff would be liable for income tax upon any award of damages."

Subsequently the jury returned a general verdict in favor of the plaintiff for the sum of $41,000.00, together with the special interrogatories and its answers thereto. They read:

"1. Do you find that the defendant was guilty of any act of negligence? Answer—yes.

"2. If you answered the preceding question 'yes' state what acts of defendant constituted such negligence. Answer—Forklift load was hanging out in right of way of U Avenue.

"3. Do you find that the plaintiff was guilty of contributory negligence? Answer—No.

"4. If you answer the preceding question 'yes' state what acts of the plaintiff constituted such contributory negligence. Answer _____.

"5. What do you find was the proximate cause of the accident? Answer— Forklift load was hanging out in the right of way."

Thereafter the defendant filed a motion for a new trial, a motion to set aside the verdict and answers to special questions, and a motion for a judgment notwithstanding the verdict. Ultimately these motions were overruled and the trial court found that the verdict should be approved and judgment entered for the plaintiff in accord with such verdict. Following rendition of the judgment as indicated defendant perfected the instant appeal wherein, under proper specifications of error, it raises the questions, to which we shall presently refer, on which it relies as grounds for reversal of the judgment.

In its brief appellant lists three questions as involved. These will be considered in the order in which they are presented.

The gist of the first question raised is that the jury's answer to special interrogatory No. 2, *i. e.*, "Forklift load was hanging out in right of way of U Avenue," finds appellant guilty of negligence which was not alleged in the petition and entitles it to judgment on the answers to the special interrogatories notwithstanding the verdict.

In support of its position on the point now under consideration, citing *Uhl v. Phillips Petroleum Co.*, 164 Kan. 401, 190 P. 2d 349, and other decisions to the same effect, appellant argues that appellee cannot recover on negligence which is not alleged and that a finding of a specific act of negligence exonerates it of all other acts of negligence alleged in the petition. We have no quarrel with the rule announced in such decisions. The difficulty from appellant's standpoint is that it has no application here. The petition alleges appellant's employee was negligent (*b*) in running the stop sign at the entrance of U Avenue and Thirty-fifth Street and (*c*) in failing to yield the right of way to traffic on such Avenue, which traffic had the right of way. Moreover, the record discloses ample evidence to warrant a conclusion that, stopped or moving, appellant's forklift had been operated in such manner that a part of its load, *i. e.*, two and one-half feet of the steel plate, was within the vehicular traffic area of U Avenue at the time the accident occurred and, according to the answer to interrogatory No. 5, was the proximate cause of such accident. In that situation, keeping in

mind (1) that the load was an integral part of the forklift and (2) that a jury of laymen is not required to answer special questions in the precise language used by a lawyer in drafting a pleading, it cannot be successfully argued that the jury's answer to interrogatory No. 2 was unrelated to the negligence charged in portions of the petition heretofore identified as (b) and (c). Indeed, we are inclined to the view that the answer to such interrogatory is not so out of harmony with the allegations of negligence, identified in the petition as (f) and (h), that it cannot be said to come within the scope of those allegations. For decisions supporting the conclusions just announced see *Moorhouse v. Robbins,* 145 Kan. 157, 159, 64 P. 2d 5; and *Jacobs v. Hobson,* 148 Kan. 107, 109, 79 P. 2d 861.

Appellant's second question is based on the premise that the trial court erred in refusing to instruct the jury that an award of damages for personal injuries is exempt from State and Federal income taxes.

To concede that the amount of damages received whether by action or by agreement on account of personal injuries is expressly excluded and is exempt from income taxes under existing provisions of the Internal Revenue Code (26 U. S. C. A. § 104 [a] [2]) and the Kansas Income Tax Act (G. S. 1957 Supp., 79-3205, subsection [b] [4], now G. S. 1959 Supp., 79-3205, subsection [b] [4] I. [1] [2]) is not decisive of the question raised by appellant. Since it is of first impression in Kansas it must be considered and determined in the light of decisions from sister states where it has been squarely raised and decided.

From our extended examination of the decisions it appears the great weight of authority in the United States is committed to the rule that, in an action to recover damages for personal injuries, an instruction such as is now under consideration is improper and when requested should be refused. In the jurisdictions which have refused to permit the jury to consider such an instruction where it was requested, and we may add in those where such an instruction has been held to have been improperly submitted, divers reasons have been given by the courts as to why such instruction has no place in a personal injury action. Many of these appear in the well-considered decision in *Briggs v. Chicago Great Western Ry. Co.,* 248 Minn. 418, 80 N. W. 2d 625, where it is held:

"In a personal injury suit the incidence of Federal income taxation is not a proper factor to be considered by the jury in making an award of damages

and it is, therefore, improper to instruct the jury that an award for damages for impairment of earning capacity, whether past or future, is exempt from such taxation." (Headnote No. 12.)

And in the opinion said:

"The trial court properly denied defendant's request that the jury be instructed that any recovery by the plaintiff was exempt from Federal income taxes. We do not concur in the holding of *Dempsey v. Thompson*, 363 Mo. 339, 251 S. W. (2d) 42, wherein the Missouri court held it proper to instruct the jury that any award of damages is not subject to Federal income taxes and that such taxes should not be considered in fixing the amount of damages. The majority rule is to the contrary and we adopt it as more in accord with sound judicial administration. The injection of the question of income tax liability is likely to give rise to more problems than it would solve. In rejecting the rule of the Dempsey case, *supra*, the Illinois Supreme Court in *Hall v. Chicago & N. W. Ry. Co.*, 5 Ill. (2d) 135, 151, 125 N. E. (2d) 77, 86, appropriately said:

" 'It is a general principle of law that in the trial of a lawsuit the status of the parties is immaterial. Thus, what the plaintiff does with an award, or how the defendant acquires the money with which to pay the award, is of no concern to the court or jury. Similarly, whether the plaintiff has to pay a tax on the award is a matter that concerns only the plaintiff and the government. The tort-feasor has no interest in such question. And if the jury were to mitigate the damages of the plaintiff by reason of the income tax exemption accorded him, then the very Congressional intent of the income tax law to give an injured party a tax benefit would be nullified.'

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"The fallacy of the contention that, if the instruction is not given the jury is likely to enhance the award by including an amount for income taxes, is based on the unjustified assumption:

" '.   .   . that the jury will not confine itself to the evidence nor the court's charge but will consider and take into account matters not mentioned therein. This is to assume that there will be misconduct on the part of the jury, an assumption in which we cannot indulge.' *Missouri-Kansas-Texas R. Co. v. McFerrin* (Tex. Civ. App.) 279 S. W. (2d) 410, 419, reversed on other grounds, 156 Tex. ____, 291 S. W. (2d) 931.

"We hold, in accord with the majority rule, that in a personal injury suit the incidence of Federal income taxation is not a proper factor to be considered by the jury in making an award of damages and that it is therefore improper to instruct the jury that an award for damages for impairment of earning capacity, whether past or future, is exempt from such taxation." (pp. 430, 431, 432.)

Additional reasons, equally applicable although the court was dealing with the force and effect to be given remarks of the defendant's counsel in closing argument to the effect that whatever amount the plaintiff received by way of verdict would not be subject to Federal income taxes, are set forth in the landmark case of

*Hall v. C. & N. W. Ry. Co.*, 5 Ill. 2d 135, 125 N. E. 2d 77, where, in the opinion, it is said:

"This is a case of first impression in this court, and so far as we have been able to ascertain, with the exception of the Appellate Court decision, only one reviewing court in this country has sanctioned an instruction, or argument, which points out that a personal injury award is not subject to Federal income tax.

. . . . . . . . . . . . .

"Further, the jury was correctly instructed on the measure of damages, being told specifically the elements that they should consider in awarding damages. Hence, unless it be assumed that they might not follow the instructions, there could be no purpose in mentioning anything about the award not being subject to Federal income tax. However, by the very nature of the jury system this court cannot indulge the presumption that juries do not follow the instructions of the courts. The Supreme Court of the United States, in *Wilkerson v. McCarthy*, 336 U. S. 53, said at page 62: 'Courts should not assume that in determining those questions of negligence, juries will fall short of a fair performance of their constitutional function. In rejecting a contention that juries could be expected to determine certain disputed questions on whim, this Court, speaking through Mr. Justice Holmes, said: "But it must be assumed that the constitutional tribunal does its duty and finds facts only because they are proved." *Aikens v. Wisconsin*, 195 U. S. 194, 206.' It may be conceded that the possibility of harm exists if the jury is left uninformed on this matter; on the other hand, it is conceivable that the plaintiff could be prejudiced if they were told of this law. In either case, however, the possibility is speculative and conjectural, and such being the case, it is better to instruct the jury on the proper measure of damage and then rely on the presumption that they will properly fulfill their duty by following said instructions.

"It does not necessarily follow that the argument is proper because it correctly states the law. For if the defendant's argument is proper on the basis that it tells the jury what the law is then what objection can there be for plaintiff's counsel to state that the expense of trial is not provided for in the instruction concerning damages, that the cost of medical witnesses is not paid by the defendant, that the expense of taking depositions, as well as court reporting at the trial, must be borne by the individual litigants, that the fees of plaintiff's attorney are not recognized as an element, that the defendant can deduct any award it pays from its income and excess profits tax return and that the amounts of awards are allowed as expenses in providing for increasing railroad fares? This could be developed *ad infinitum*, and all this is the law.

. . . . . . . . . . . . .

"The defendant has cited *Dempsey v. Thompson*, 363 Mo. 339, 251 S. W. 2d 42, wherein the Missouri Supreme Court held that it was proper to instruct the jury that an award was not subject to Federal income tax. For the reasons stated herein, we disagree with the conclusion reached by that court. . . .

"We are of the opinion that the incident of taxation is not a proper factor for a jury's consideration, imparted either by oral argument or written in-

struction. It introduces an extraneous subject, giving rise to conjecture and speculation." (pp. 149, 150, 151, 152.)

For other decisions where the above mentioned rule is considered, discussed, applied and adhered to, under conditions and circumstances similar to those involved in the Briggs case, see *Hardware Mutual Cas. Co. v. Harry Crow & Son, Inc.,* 6 Wis. 2d 396, 94 N. W. 2d 577; *Louisville & Nashville Railroad Co. v. Mattingly* (1958 Ky.), 318 S. W. 2d 844; *Wagner v. Illinois Cent. R. Co.,* 7 Ill. App. 2d 445, 129 N. E. 2d 771; *Combs v. Chicago, St. Paul, Minneapolis & Omaha Ry. Co.* (N. D. Iowa), 135 F. Supp., 750, 756, 757; *Missouri-Kansas-Texas Railroad Co. v. McFerrin* (Tex. Civ. App.), 279 S. W. 2d 410, 418, 419; *Maus v. Rd. Co.* (1955 Ohio App.), 128 N. E. 2d 166, 165 Ohio St. 281, 135 N. E. 2d 253.

After careful consideration of the foregoing decisions we are convinced Kansas should follow the majority rule and therefore hold that the trial court's action, in refusing to grant appellant's request to instruct the jury that an award of damages for personal injuries in the case at bar would be exempt from State or Federal income taxes, was proper and should be upheld.

In reaching the conclusion just announced we have not been unmindful of three decisions cited and relied on by appellant as supporting a contrary view. They are *Dempsey v. Thompson,* 363 Mo. 339, 251 S. W. 2d 42; *Floyd v. Fruit Industries, Inc.,* 144 Conn. 659, 136 A. 2d 918; and *Highshew v. Kushto,* cited as if it appears only in 126 *Ind. App.,* 584, 131 N. E. 2d 652. Having given these decisions the same careful consideration as those heretofore cited in support of the majority rule it suffices to say (1) that we do not concur in the holding of the Dempsey case or in the subsequent decision of *Bowyer v. TE-Co., Inc.* (1958 Mo.), 310 S. W. 2d 892, not cited by either party, wherein the holding in Dempsey is approved; (2) that we believe the Floyd case is clearly distinguishable and hence entitled to little, if any, weight in disposing of the issues now under consideration; and (3) that we are convinced appellant's contention the Highshew case supports its position is not tenable because, when that case was brought before the Supreme Court of Indiana on a petition to transfer the cause from the appellate court of that state, the Supreme Court indicated a definite view to the contrary and in a written opinion (see *Highshew v. Kushto,* 235 Ind. 505, 134 N. E. 2d 555), held, in substance, that

inquiries at a trial into the incidents of taxation in damage suits of the character there—and here—involved are not a proper subject for instructions or argument of counsel. For a subsequent decision dismissing a petition to withdraw the opinion in the same case see 235 Ind. 509, 135 N. E. 2d 251.

In passing we note appellant's suggestion that the trial court erred when, in response to the jury's specific inquiry with respect to the subject, it gave that body an additional instruction to the effect that in its deliberations it was not to consider the question whether plaintiff would be liable for income taxes upon any award of damages. We are not disposed to labor this point. It suffices to say that under the decisions to which we have heretofore referred, holding that the incidence of State or Federal income taxation is not a proper factor to be considered by the jury in making an award of damages, in a personal injury action, such instruction was correct as a matter of law and did not result in reversible error.

At this point, since it has not been previously stated, it should be said, lest we be charged with overlooking it, that in the face of the record presented we are convinced this is primarily a fact case in which the jury, although the evidence is conflicting, was warranted, as it did, in resolving all factual issues joined by the pleadings against the appellant.

Thus we come to appellant's third and final question in which it is claimed the amount of the verdict is not supported by the evidence and is so excessive it shows bias and prejudice on the part of the jury.

We are not disposed to review the many cases cited by counsel for the parties dealing with other situations where questions relating to the excessive status of a verdict have previously been discussed, considered and determined. Many of them are cited and discussed in our decision of *Knoche v. Meyer Sanitary Milk Co.*, 177 Kan. 423, 280 P. 2d 605, and are there available for ready reference to readers of this opinion. Nor are we inclined to labor the strenuous arguments made by counsel in behalf of their respective clients, all of which have had our considered attention, regarding their views as to whether the involved verdict and judgment should be set aside as excessive. Moreover, we do not believe it is either necessary or required that we here detail the evidence relating to the extent and consequences of appellee's injuries. It is sufficient to say that, after an exhaustive review and careful examination of the

entire record, taking into consideration appellee's age, his life expectancy, his probable loss of earnings, the nature of his injuries and their permanence, including the fact his condition, both physical and mental, will grow progressively worse with age, and the pain and suffering which he has endured and will continue to endure from such injuries; and considering the amount of verdicts for somewhat comparable injuries, in the light of increased cost of living and the impaired purchasing power of money, we have finally concluded it should not be said the amount of the verdict, even though it is for a substantial amount and must be considered as quite liberal, is such as to shock the conscience of this court or that it should be set aside or disturbed as excessive.

On the basis of the conclusions just announced, since all arguments with respect t᷈ erete are founded on the amount of the verdict, we are impelled to hold appellant's contention the trial court abused its discretion in refusing to grant a new trial on the ground such verdict was so grossly excessive as to indicate passion and prejudice on the part of the jury cannot be upheld.

Other contentions made by appellant have been considered and rejected as affording no sound grounds for reversal of the judgment. Therefore such judgment must be and it is hereby affirmed.