No. 44,936

David Michael Brown, a Minor, by and Through His Mother, Natural Guardian and Next Friend, Betty L. Brown, *Appellant,* v. Doris O. Godfrey, *Appellee.*

(438 P. 2d 117)

Opinion filed March 9, 1968.

*James P. Johnston,* of Wichita, argued the cause and *Clarence R. Sowers, John W. Sowers* and *Davis S. Carson,* all of Wichita, were with him on the brief for the appellant.

*Daniel C. Bachmann,* of Wichita, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

Fontron, J.: This action is brought by David Michael Brown, through his mother as next friend, to recover damages for personal injuries occasioned when he was struck by a car driven by the de-

fendant, Doris O. Godfrey. For convenience, we will refer to the parties either by name or as plaintiff and defendant, respectively.

The case was tried to a jury which returned a verdict in plaintiff's favor for $1,038.15. The plaintiff has appealed. Essentially, two contentions are presented: First, that the trial court erred in overruling plaintiff's motion for a directed verdict on the question of liability and in refusing to submit the case on the question of damages only; and second, that the jury's verdict was so inadequate as to show passion and prejudice.

The facts are relatively simple. The accident occurred at approximately 11:45 a. m., July 30, 1963, near the north end of a bridge which spans South Seneca Street in Wichita. The plaintiff, who was then seven years old, and at least two other children were either walking or playing along the side of the highway, with David being separated somewhat from the rest.

At the same time, the defendant was driving south on Seneca Street in a 45 miles per hour speed zone. Reliable estimates indicated that Mrs. Godfrey was not exceeding the speed limit but was proceeding at a speed of from 36 to 40 miles per hour. Visibility was unobstructed for 1000 feet north of the bridge and for an even greater distance south of the bridge.

David was in the defendant's lane of travel when he was hit, about 8 feet west of the center of the highway. Neither of the two eye witnesses who testified at the trial had observed or knew how the boy happened to be at that location. The defendant, herself, testified she did not see David until he suddenly appeared in front of her car, "just out of nowhere as if he were dropped."

The defendant further testified she had no recollection of seeing any children or of applying her brakes; that she should have seen the children, but did not, and she didn't know why. This is the evidence on which the plaintiff primarily predicates his first claim of error, i. e., that the trial court erred in overruling his motion for a directed verdict against the defendant as to liability and in not submitting the case to the jury on the question of damages alone.

We believe plaintiff's contention in this regard cannot be sustained. Our rule is clear that on a motion for a directed verdict the evidence, including all inferences which can reasonably be drawn therefrom, must be construed strictly against the party making the motion and most favorably to the party against whom

the motion is directed; and where the evidence is such that reasonable minds might arrive at different conclusions therefrom, the motion must be overruled and the issue must be submitted to the jury for its determination. (*Baker v. Western Casualty & Surety Co.*, 196 Kan. 345, 411 P. 2d 711; *Williams v. Benefit Trust Life Ins. Co.*, 195 Kan. 579, 408 P. 2d 631.) The rule is equally applicable to such motions whether filed on behalf of a defendant (*Bingham v. Hillcrest Bowl, Inc.*, 199 Kan. 40, 427 P. 2d 591) or in behalf of a plaintiff. (*Gardner v. Pereboom*, 197 Kan. 188, 416 P. 2d 67.)

In urging that the defendant's own testimony convicts her of negligence when she said she should have seen the children, and in contending that the trial court should have directed a verdict against her as to liability, the plaintiff would have us ignore other pertinent evidence presented by the defense. One of the officers who investigated the accident testified, without contradiction, that Mrs. Godfrey's car laid down 102 feet of skid marks before coming to rest eleven feet and four inches back of where David lay on the roadway.

A member of the Wichita police force, John F. Stackley, the department's Safety Officer and Safety Engineer, whose qualifications as an expert appear impressive, testified that the skid marks indicated a speed of 36.1 miles per hour when the brakes were applied on defendant's car; that allowing for the average reaction time of ¾ of a second, during which the car at that speed would travel 40 feet, and allowing also for a similar perception time, Mrs. Godfrey apparently first perceived danger and started to do something about it when 182 feet from where the car came to rest.

The physical evidence, as it was interpreted by the expert, Stackley, would thus tend to negative the defendant's statement that she did not see the children until David suddenly appeared in front of her car. The defense sought to buttress the probative value of this evidence through the testimony of a feminine clinical psychologist, holding master and doctor degrees in her field, who testified that a person in stress might forget things which happened at the moment of stress and could react almost in reflex without cognitive or thought processes going on; and that in her opinion one could react without perceiving, and later on would not recall.

In our judgment there was evidence, even though it might have been weak, from which the jury could have inferred that the de-

fendant was not guilty of negligence, and thus not liable. In *Gardner v. Pereboom,* supra, we said:

"A question of fact may not be taken from the jury where reasonable minds might reach different conclusions from the evidence. (*Lackey v. Price,* 190 Kan. 648, 378 P. 2d 19; *Johnston v. Gann,* 193 Kan. 102, 391 P. 2d 1016.) This is true although the evidence is weak and inconclusive. . . ." (p. 189.)

Plaintiff's counsel assails the testimony of officer Stackley, but as the same appears in the record, we are unable to brand it as weird, contradictory or concocted. In any event, the weight or credit to be given his testimony would be a matter for the jury to pass upon.

We are constrained to hold that the trial court was correct in holding that the question of liability should be submitted to the jury, and that no error was committed in overruling plaintiff's motion for a directed verdict.

Plaintiff next contends that the verdict of $1,038.15 is so inadequate as to indicate passion and prejudice on the part of the jury. It is said that the verdict is $53.85 less than the plaintiff expended for medical and hospital expenses. This argument overlooks the defendant's contention, which finds considerable support in the evidence, that only $543.15 of the $1,092.00 expenses claimed, was for treatment of injuries attributable to the accident itself.

There was sharp dispute as to whether David's injuries sustained in the accident included brain damage, and much of the medical and hospital expense claimed was not for treatment of physical injuries but for purposes of evaluation in attempting to establish a causal relationship between David's mentally retarded condition and the accident. In addition, other medical and hospital expenses were claimed for treatment of a condition of the boy's left hip which had existed for over a year prior to the accident.

There was a great deal of testimony, both expert and lay alike, some of it coming from plaintiff's own witnesses, which contradicted plaintiff's claim of brain damage due to the accident. The evidence was undisputed that David was a retarded child with definite learning difficulties before the accident occurred. In our view, there was abundant evidence to have justified the jury in concluding that David suffered no brain damage from the mishap of July 30, 1963, and in concluding, also, that the legitimate medical and hospital expenses accruing therefrom were only $543.15, as maintained by the defendant.

If it be assumed, as we believe is only logical, that the jury

declined to accept plaintiff's theory that Mrs. Godfrey was responsible both for the damage to David's brain and nervous system and for the trouble in his left hip, the verdict which was returned exceeded by $495.00 the hospital and medical expenses legitimately charged to defendant's negligence. Tested in this frame of reference may it be said that the jury's award was so grossly inadequate as to show it was rendered through passion and prejudice?

We shall here attempt no protracted or profound discussion of the principles by which our determination of that question must be governed. On numerous occasions, we have spoken at some length concerning this subject, among our most recent decisions being *Corman, Administrator v. WEG Dial Telephone, Inc.*, 194 Kan. 783, 402 P. 2d 112 and *Furstenberg v. Wesley Medical Center*, 200 Kan. 277, 436 P. 2d 369, the latter having been handed down only last month. In Furstenberg, we held:

"There is no fixed or absolute standard for measuring the adequacy or inadequacy of a verdict, but the question must be determined on the basis of the particular facts and circumstances obtaining in the individual case. (Syl. ¶ 4.)

"Whether personal injury has proximately resulted from negligence on the part of a defendant, and the extent of the injury so resulting, are ordinarily matters for a jury to determine." (Syl. ¶ 5.)

We believe it would indeed be difficult to characterize this verdict as generous, but whether it may be stigmatized as grossly deficient is another matter. The learned trial court, in overruling plaintiff's motion for a new trial, referred to the verdict as being a little bit tight, a little bit stingy, but not arbitrary or due to duress or passion.

The only evidence of physical damage suffered by David in the accident pertained to a broken right leg, both tibia and fibula having been fractured, and to bruises about the face and shoulders. David remained in the hospital for nine days and was in a cast about two months. His mother testified that he started to school on crutches. Both the bruises and leg healed normally, leaving no permanent after effects. There was no evidence linking plaintiff's left hip problem to the accident, while the evidence relating to any pain which may have resulted from the broken leg and head abrasions is really quite meager.

It is argued that the jury awarded nothing for the pain, suffering and disability necessarily attendant upon a broken leg. We think it must be conceded that some pain would follow a broken bone

and that few persons would willingly accept the discomfort and inconvenience involved in a leg fracture for the paltry $495.00 which remained after deducting expenses for treating David's leg and his bruises. On the other hand, it cannot honestly be said there was no compensation allowed for David's injuries, assuming brain damage was absent, for even in these days of inflated values, $495.00 is not totally insignificant. The jury may have been conservative, but as the trial court observed, it is not the court's prerogative to second guess the jurors as to adequacy unless prejudice, unreasonableness or arbitrariness is evidenced from the size of the verdict under attending circumstances.

Plaintiff's counsel argues that it is apparent some jurors did not want to return a plaintiff's verdict, probably because defendant was a school teacher without a prior accident record; that it is well known that defense attorneys prefer school teachers as defendants; and that juries simply do not like to bring in verdicts against teachers. These are indeed interesting observations, but the views expressed have hardly attained sufficient currency to justify us in taking judicial notice of them.

In summary, we are disinclined to say that passion and prejudice is inherent in the verdict because of inadequacy, even though in some eyes it might well have been larger.

We find no error in the judgment of the court below and the same is affirmed.