No. 46,689

LAURENCE R. RIGGS, *Appellee,* v. MISSOURI-KANSAS-TEXAS RAILROAD COMPANY, *Appellant.*

(508 P. 2d 850)

Opinion filed April 7, 1973.

*James J. Lysaught,* of McAnany, Van Cleave and Phillips, of Kansas City, argued the cause, and *James R. Goheen,* of the same firm, was with him on the brief for the appellant.

*Cliff W. Ratner,* of Ratner, Mattox, Ratner, Ratner and Barnes, of Wichita, argued the cause, and *Payne H. Ratner, Jr.,* and *William L. Roberts,* of the same firm, were with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is an action brought by a railroad employee to recover damages for personal injuries against the railroad under the provisions of the Federal Employers' Liability Act, 45 U. S. C. A.

§ 51, *et seq.* The case was tried to a jury which rendered a verdict in favor of the plaintiff in the amount of $56,000. The plaintiff-appellee, Laurence R. Riggs will be referred to in this opinion as plaintiff or Riggs. The defendant-appellant, Missouri-Kansas-Texas Railroad Company, will be referred to as defendant or the railroad or MKT.

The plaintiff Riggs was injured in the course of his employment on November 13, 1969, in Vinita, Oklahoma. The applicability of the Federal Employers' Liability Act is not disputed. Both the issue of defendant's liability and the nature and extent of plaintiff's injuries were hotly contested by the parties. On the date of the accident on November 13, 1969, the plaintiff was employed as a carman by the defendant railroad. The plaintiff had previously been employed as a carman by the Santa Fe Railroad. He had worked for MKT in that job capacity since 1965. The duties of a carman primarily involved the inspection and repair of railroad cars including their braking systems. One of the principal parts of a railroad car's braking system is its brake pipe or train line. It essentially is a 1¼-inch pipe that runs from one end of the car to the other. The brake pipe is connected to the brake lines of other cars in the train by air hoses. Air pressure is maintained in the pipes throughout the train's braking system. The air pressure prevents the car's braking system from being activated. In the absence of air pressure the car's brakes are activated and braking action is applied automatically without the control of the engineer. Hence it is important to maintain the air pressure in the brake system. Sometimes leaks develop in the train's brake pipes which require repair by the carman. When a railroad car is in a yard repair area, an air compressor is used to pump air into the lines. The carman listens for the escape of air and the leak is thus located. When leaks occur during the course of a trip, the railroad car is sometimes taken out of service and placed on a sidetrack away from the yard repair area. In that situation the carman is sent to the location of the railroad car taking with him, if available, a portable air compressor which is used to locate the leak. Where an air compressor is not available another method is sometimes used in the railroad industry to locate the leak. It involves the use of a burning fusee. A fusee is essentially a flare which burns with a red flame. It is designed to be used for emergency illumination and for signaling purposes. A fusee is classified as a Class C explosive by the regulations of the Inter-

state Commerce Commission. It is primarily a burning device and ordinarily will not explode in the open air. It will explode, however, when it is lighted and placed in a severely confined area. Gas pressure builds up to the point where a bursting type explosion occurs. The burning fusee is used in order to introduce smoke into the brake pipe. Smoke from the fusee travels through the brake pipe, building up enough pressure to force smoke out at the point of the leak. The carman then visually locates the point of the leak by observing the escaping smoke. The brake system is then repaired at the point of the leak.

On November 13, 1969, the day of the injury, the plaintiff's foreman, Herbert Schrum, directed the plaintiff to repair a brake line leak on a freight car which has been placed on a sidetrack near Vinita, Oklahoma. The evidence is undisputed that there was a portable air compressor available for use by the plaintiff had it been furnished to him. The plaintiff was assigned a pickup truck which was not equipped with an air compressor. Plaintiff was further directed by his foreman to use fusees to check for leaks in the brake pipe. He had used them previously. Upon arriving at the sidetrack where the freight car was located, plaintiff visually inspected the brake pipe and finding nothing wrong removed the air hose from the angle cock valve at one end of the freight car. Because of the particular design of this freight car plaintiff screwed on a 1¼-inch diameter pipe long enough to hold a fusee. Plaintiff closed the angle cock valve at the other end of the brake pipe. He lighted the fusee and inserted it into the pipe. He inspected the train line for 10 minutes and discovered no leak. Plaintiff then removed the angle cock valve which capped the end of the pipe and inserted another lighted fusee into the pipe. Plaintiff raised up to continue his inspection of the brake pipe. The pipe suddenly exploded knocking plaintiff to the ground several feet north of where he had been standing. He suffered personal injuries, the extent of which is greatly in dispute and which will be discussed in more detail later.

There was much evidence presented in the case by both plaintiff and defendant concerning the use of fusees in the railroad industry to locate a leak in a railroad car's braking system. The railroad presented testimony that there are two accepted methods used by the industry to test the lines. One method involves the use of an air compressor; the other method involves the use of a fusee in the manner heretofore discussed. The safety supervisor for the defendant

considered either method to be safe and testified that to his knowledge no railroad, union or governmental agency has promulgated any regulations prohibiting the use of either method. Several experienced carmen and railroad foremen were called to testify. They stated that fusees have been commonly used to test train lines without difficulty for a number of years. The defendant's theory as to the cause of the accident was that the explosion occurred because the plaintiff had closed the angle cock valve located between the 10-inch section of pipe and the brake line on the railroad car. If this had been the case the smoke and gas from the fusee would have been trapped within the 10-inch-long pipe which would understandably explode. The railroad argued that the use of the fusee was an entirely proper method and that the explosion was the result of the plaintiff's own contributory negligence in failing to open the angle cock valve at the end of the 10-inch pipe. There was evidence to support the railroad's position. Following the accident the railroad's experts examined the angle cock valve and found that none of the debris from the burning fusee had gone past the angle cock valve into the brake pipe. Hence they concluded that the smoke from the fusee was confined in the 10-inch pipe causing the pipe to explode.

The evidence offered by the plaintiff was to the contrary. The plaintiff Riggs testified positively that he had opened the angle cock valve between the 10-inch section of pipe and the train line before inserting the fusee. Furthermore there was the testimony of Harry J. Beggerly, another carman employed by MKT, who went to Vinita after the explosion to bring plaintiff back to Parsons for medical treatment. Beggerly was instructed to pick up the parts that had blown up and fix the train line. He testified positively that when he arrived at the boxcar he observed that the angle cock valve between the pipe which contained the fusee and the brake pipe was in an open position. His testimony indicated that there could have been an obstruction at another place in the line. The safety engineer for the army ammunition plant at Parsons testified as to the explosive nature of a fusee and stated that it was possible that some residue from the first fusee which the plaintiff had lighted and inserted in the pipe could have obstructed the pipe and caused the explosion. Another experienced carman testified on behalf of plaintiff indicating that it is safer to use compressed air and that a fusee should not be used to test for leaks. Considered as a whole plain-

tiff's evidence tended to show that the preferred and safest method for testing for leaks is through the use of an air compressor and that the fusee method exposes the railroad employee to the dangers discussed heretofore.

Throughout the litigation the plaintiff relied essentially on the theory that the railroad, as his employer, negligently failed to provide safe and sufficient tools with which to accomplish his assigned task, failed to warn him of the danger of using a fusee to locate leaks in a train line, and that defendant failed to furnish him a reasonably safe method of work to accomplish the task.

By way of defense the defendant denied any negligence on its part, claiming that the plaintiff was guilty of contributory negligence in failing to give proper attention to the work he was doing, in failing to follow the instructions of his foreman, in failing to observe any hazardous conditions and in failing to perform his duties in a safe manner. On the trial of the case the jury resolved the issue of liability in favor of the plaintiff and awarded plaintiff damages in the total amount of $56,000. The defendant filed a motion for a new trial which was overruled. The defendant filed a timely appeal with this court.

As a basis of claimed error the first point raised by defendant is that the evidence of negligence on the part of the railroad was insufficient as a matter of law to justify the submission of the case to the jury. At the outset it should be emphasized that this is an action brought under FELA, the Federal Employers' Liability Act, 45 U. S. C. A., § 51 *et seq.*, rather than an action to recover damages on a theory of common law negligence. The landmark case which establishes the test for liability of a railroad under the Federal Employers' Liability Act is *Rogers v. Missouri Pacific R. Co.*, 352 U. S. 500, 1 L. Ed. 2d 493, 77 S. Ct. 443.) In *Rogers* the Supreme Court stated as follows:

"Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence . . ." (p. 506.)

In *Urie v. Thompson*, 337 U. S. 163, 93 L. Ed. 1282, 69 S. Ct. 1018, the Supreme Court emphasized that what constitutes negligence under the statute is a federal question, not varying in accordance with the differing conceptions of negligence applicable under

state and local laws for other purposes and is governed by federal decisional law.

In *Webb v. Illinois Central R. Co.*, 352 U. S. 512, 1 L. Ed. 2d 503, 77 S. Ct. 451, it was held that in passing upon whether there is sufficient evidence to submit an issue to the jury, the court need only look to the evidence and reasonable inferences which tend to support the plaintiff's theory.

The duties which an employer owes to his employees are well established. An employer has a duty not to expose his employee in the discharge of his employment to perils and dangers against which the employer can guard by the exercise of reasonable care. He has a duty to warn the employee of hazardous conditions. It is also the employer's duty to provide for his employees a safe place to work and suitable tools, machinery and appliances with which to perform an assigned task. An employee may enter upon the discharge of his labor under the assumption that these duties have been discharged by the employer. These duties are recognized in the federal decisions in cases brought under FELA. (*McGivern v. Northern Pac. Ry. Co.*, 132 F. 2d 213 [8th Cir. 1942.]; *Stone v. New York, C. & St. L. R. Co.*, 344 U. S. 407, 97 L. Ed. 441, 73 S. Ct. 358.)

In Kansas in actions brought on a common law theory of negligence, the defense of assumption of risk is available to the employer. Assumption of risk as a defense has been abolished by the Federal Employers' Liability Act, 45 U. S. C. A., § 54. Likewise contributory negligence on the part of an employee does not completely bar a recovery but only diminishes the recovery in proportion to the amount of negligence attributable to the employee. (45 U. S. C. A., § 53; *Keith v. Wheeling & L. E. Ry. Co.*, 160 F. 2d 645 [6th Cir. 1947].)

Applying these controlling principles of law to the factual circumstances of this case, we find that the trial court did not err in holding that the evidence was sufficient to go to the jury on the issue of the defendant's negligence. It is undisputed that a portable air compressor was available and could have been provided by the railroad to plaintiff. The evidence offered by the plaintiff tended to establish that the use of an air compressor provides a safer method of testing a braking system for leaks than does the use of fusees which present a real threat of explosion when burned within a confined space.

The defendant further contends that the evidence does not afford

a sufficient basis for the jury to ascertain the amount of damages in money with any reasonable certainty and is insufficient to support the amount of the verdict of $56,000. The nature and extent of the injuries suffered by the plaintiff in the explosion were contested at the trial. It was not disputed that the plaintiff suffered some injury as the result of the explosion on November 13, 1969. After the explosion occurred the plaintiff's face was bloody, he radioed for help and an employee of the defendant who was near the scene picked up the defendant and took him to the Vinita hospital where he received emergency treatment. Plaintiff was then taken back to Parsons where he was admitted to the Labette County Medical Center for medical treatment. Plaintiff was released from the hospital after one week and returned to work. He continued to work for the railroad until January 13, 1970, when because of his pain he ceased work. The plaintiff testified that since his injury he has been unable to keep his balance, suffering vertigo. He has experienced a loss of hearing, ringing in his ears, pain in his neck and back, and continuous headaches. Since his injury he has had great difficulty in lifting and he tires easily. He complains of increased emotional problems.

Dr. Maurice K. Borklund testified that the plaintiff suffered from headaches and neck and lower back pain; that he has treated plaintiff continually on a weekly basis since the accident by neck stretching, pelvic traction and deep heat microthermy. In his opinion as a result of the accident plaintiff suffered a concussion with resulting loss of hearing and further suffered an aggravation of a preexisting arthritis. In his opinion the plaintiff's condition is permanent and continued treatment will be necessary in the future.

Dr. Averill Stowell, a neurosurgeon, found plaintiff with symptoms of headache and dizziness. He made a diagnosis of ligamentous strain in the cervical and lumbar area with an aggravation of arthritic changes in the cervical-lumbar region. In his judgment the plaintiff's pain is probably relatively permanent.

Leonard Hall, audiologist at the University of Kansas Medical Center, found hearing impairment in both ears with vertigo or dizziness. Plaintiff's hearing loss is at the higher end of the scale. In Hall's judgment this high-frequency loss of hearing is compatible with a blasting problem. Apparently plaintiff's hearing for ordinary speech is not impaired.

The plaintiff was examined on behalf of the defendant by Dr.

Ivan W. Cain, an orthopedic specialist. He found degenerative arthritic changes in the cervical and lumbar area which in his opinion had developed over many years and were not the result of trauma. Although disputing that there was a causal connection between the explosion and plaintiff's pain, Dr. Cain conceded that plaintiff's arthritic condition is permanent.

At the time of the trial the plaintiff was 53 years of age and the parties stipulated that he had a life expectancy of approximately 21 years. His loss of earnings as of the date of the trial was computed to be approximately $11,000. At the time of his accident the plaintiff was earning about $155 per week. Plaintiff received hospital and medical services from the MKT Employees' Hospital Association. These were not claimed as an element of damages at the trial. The railroad argues that the verdict of $56,000 is so excessive as to require a reversal or a remittitur of the excessive amount. We have held on many occasions that there is no fixed or absolute standard for measuring the excessiveness or inadequacy of a verdict in a personal injury action. The question must be decided on the particular facts of the individual case and whether injury proximately resulted from the negligence of a party, and the extent of any such injury, are ordinarily matters for the jury to determine. (*Brown v. Godfrey*, 200 Kan. 568, 438 P. 2d 117.) In order for a judgment to be set aside on the grounds of an excessive verdict, it must appear that the amount of the verdict is so grossly excessive as to shock the conscience of the court. (*Spencer v. Eby Construction Co.*, 186 Kan. 345, 350 P. 2d 18.)

Under the circumstances shown in the case at bar we are unable to say that the verdict is shocking to the conscience or wholly beyond reason. In this case the trial judge heard the evidence, approved the verdict, and refused to grant a new trial on the grounds that the verdict was excessive. We should not substitute our judgment for either that of the jury or the trial judge in arriving at an award of damages to the plaintiff in this case. Although the award may be somewhat on the liberal side, there is nothing to indicate passion or prejudice on the part of the jury in arriving at its verdict.

The defendant railroad as another point on this appeal urges that the trial court erred in failing to give defendant's requested instruction No. 7 which stated in substance that the plaintiff could not recover for any disability or physical condition which existed prior to the accident and of which the accident was not a

proximate cause. We have examined all of the court's instructions in their entirety and have concluded that taken as a whole the jury was properly instructed on the issue of damages. In instruction No. 2 it is pointed out by the court that the plaintiff claims he suffered an aggravation of a preexisting back condition. In instruction No. 10 the burden of proof is specifically placed upon the plaintiff to prove that plaintiff's injury was caused in whole or part by the negligence of the defendant. The requirement of a causal connection between the explosion and plaintiff's injury is covered in instruction No. 12 where proximate cause is defined. Instruction No. 15 states categorically that the plaintiff cannot recover from the defendant unless his injury was caused by the negligence of the defendant. Instruction No. 14 included aggravation of a preexisting ailment or condition as an element of damages which could be recovered provided the plaintiff sustained his burden of proof that such injury resulted from the accident in question. The trial court might well have given PIK Civil 9.43 relating to aggravation of a preexisting condition but such instruction was not requested by the defendant. We find no error in the instructions given by the court.

We have considered the defendant's other points and find them wholly without merit.

The judgment of the trial court is affirmed.

FATZER, C. J., dissenting: I must respectfully dissent from the court's holding in (2) of paragraph 3 of the syllabus and the corresponding portion of the opinion.